IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 5, 2015 Session

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**v.**
**CARLTON J. DITTO ET AL.**

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Hamilton County**
**No. 120058     W. Frank Brown III, Chancellor**
———————————————————

**No. E2012-02292-SC-R11-CV – Filed December 11, 2015**
———————————————————

Petitioner Mortgage Electronic Registration Systems, Inc. (MERS) brought this action to set aside a tax sale of real property. MERS argues that the county's failure to provide it with notice of the tax sale violated its rights under the Due Process Clause of the federal Constitution. The defendant purchaser of the real property filed a motion for judgment on the pleadings; he argued that MERS did not tender payment of the sale price plus the accrued taxes before bringing suit, as is required by statute in a suit challenging the validity of a tax sale. The defendant purchaser also argued that MERS did not have an interest in the subject property that is protected under the Due Process Clause. The trial court granted the defendant's motion for judgment on the pleadings, holding that MERS did not have an interest in the property. The Court of Appeals affirmed, though based on MERS's lack of standing to file suit. We hold that when a plaintiff who claims a protected interest in real property files suit to have a tax sale declared void for lack of notice, the pre-suit tender requirement in Tennessee Code Annotated section 67-5-2504(c) does not apply, so MERS was not required to tender payment before filing this lawsuit. We further conclude that MERS acquired no protected interest in the subject property through either the deed of trust's designation of MERS as the beneficiary solely as nominee for the lender and its assigns or its reference to MERS having "legal title" to the subject property for the purpose of enforcing the lender's rights. Because MERS had no protected interest in the subject property, its due process rights were not violated by the county's failure to notify it of the tax foreclosure proceedings or the tax sale. Accordingly, we affirm the grant of judgment on the pleadings in favor of the tax sale purchaser, albeit on a different basis from the Court of Appeals' decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
Court of Appeals Affirmed**

HOLLY KIRBY delivered the opinion of the Court, in which SHARON G. LEE, C.J., and
CORNELIA A. CLARK, GARY R. WADE, and JEFFREY S. BIVINS, JJ., joined.

Caroline B. Stefaniak, Chattanooga, Tennessee, and JoAnn T. Sandifer, St. Louis,
Missouri, *pro hac vice*, for the appellant, Mortgage Electronic Registration Systems, Inc.

Carlton J. Ditto, Chattanooga, Tennessee, Pro Se.

William M. Barker, Chattanooga, Tennessee, for the Amici Curiae, American Land Title
Association, The Tennessee Mortgage Bankers Association, and The Tennessee Bankers
Association.

Deanna Lee Fankhauser and Robyn Beale Williams, Nashville, Tennessee for the Amicus
Curiae, Tennessee Municipal League Risk Management Pool.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

**Transaction and Deed of Trust**

In March 2005, Joseph L. Dossett and Gerald Dossett (collectively, "the
Dossetts") purchased property located at 5518 Oakdale Avenue in Chattanooga,
Hamilton County, Tennessee ("the property" or "the subject property"), as joint tenants
with the right of survivorship. The warranty deed for the property was recorded in the
Register's Office for Hamilton County, Tennessee.

In July 2006, the Dossetts and their wives borrowed about $60,000 from Choice
Capital Funding, Inc. ("Choice Capital"), which was secured by the subject property. As
is typical in such transactions, the parties executed two documents: (1) a promissory note
(a negotiable instrument) evidencing the borrowers' promise to repay the loan, and (2) a
deed of trust ("DOT")[1] securing the repayment of the loan by transferring title to the
property to the trustee and the lender.[2]

---

[1] A deed of trust is a security instrument used "in many states, taking the place and serving the
uses of a common-law mortgage, by which the legal title to real property is placed in one or more
trustees, to secure the repayment of a sum of money or the performance of other conditions." Cadence

The DOT executed in connection with the loan contains defined terms. The term "Borrower" refers to the Dossetts and their wives. The term "Lender" refers to Choice Capital. The "Trustee" in the DOT is listed as Robbie McLean, an attorney.

Pertinent to this appeal, the DOT describes Plaintiff/Appellant Mortgage Electronic Registration System (MERS) as "a separate corporation that is acting solely as nominee for [Choice Capital] and [Choice Capital's] successors and assigns." The DOT states that MERS is "the beneficiary under this Security Instrument," and it includes the full address and telephone number for MERS. The DOT for this transaction was recorded with the Register of Deeds in Hamilton County, Tennessee.

**MERS**

A brief description of MERS's role in the mortgage industry is helpful to an understanding of the issues in this case. Created in 1993, the MERS® System is wholly-owned and operated by MERSCORP, Inc. ("MERSCORP"). Sharon M. Horstkamp, *MERS Caselaw Overview*, 64 Consumer Fin. L. Q. Rep. 458, 458 (Winter 2010) (author is Vice President and General Counsel for MERSCORP). The MERS® System has been described as "a national electronic registry system that tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the registry." Id. MERS performs a service for lenders by purporting to function as "the mortgagee of record and nominee for the beneficial owner of the mortgage loan." Id.; see Thompson v. Bank of Am., N.A., 773 F.3d 741, 748 (6th Cir. 2014) ("MERS is a company that provides mortgage recording services to lenders and allows lenders to trade the mortgage note and servicing rights on the market, with MERS maintaining electronic recordings of each transaction."). "No mortgage rights are transferred on the MERS® System. The MERS® System only tracks the changes in servicing rights and beneficial ownership interests." Horstkamp, 64 Consumer Fin. L. Q. Rep. at 458. Thus, in essence, MERS tracks the transfer of residential mortgages within the MERS® System.[3]

Bank, N.A. v. Latting Rd. Partners, LLC, 699 F. Supp. 2d 1033, 1035 n.1 (W.D. Tenn. 2010) (quoting Black's Law Dictionary 503 (4th ed. 1968)). In Tennessee, the security instrument used is a deed of trust. See, e.g., In re Marsh, 12 S.W.3d 449, 452-54 (Tenn. 2000) (explaining that a deed of trust is a writing eligible for registration in Tennessee and that the deed must be acknowledged to authenticate it for valid registration).

[2] "Tennessee is a 'title theory' state. When a borrower obtains a mortgage loan to buy the house, the lender, the holder of the note, has title to the property. The borrower must satisfy her mortgage debt in order to obtain title." Thompson v. Bank of Am., N.A., 773 F.3d 741, 750 (6th Cir. 2014). "Until the note is satisfied, the holder of the note has superior title to the property." Id.

[3] It is difficult to know the extent of MERS's involvement in the mortgage industry; however, one authority has stated that MERS purports to hold "approximately 60 million mortgage loans and is

The genesis for MERS is the evolution of the residential mortgage industry. Traditionally, there was little need for a registration system such as MERS; a mortgage was a two-party transaction in which a prospective homeowner borrowed money from a lender, typically a bank that loaned the monies from its customers' deposits. Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 808 (Ind. 2012). The lender recorded the transaction in the county's land records in accordance with state real property laws and usually retained the loan until it was repaid. Ellen Harnick, *The Crisis in Housing and Housing Finance: What Caused It? What Didn't? What's Next?*, 31 W. New Eng. L. Rev. 625, 626-27 (2009).

By the beginning of the twenty-first century, mortgage lenders included not only actual banks but also companies that raise funds to lend by borrowing money from financial institutions and then repaying the financial institutions "by selling to investors the right to share in the proceeds of the mortgage payments received from borrowers." Id. This process is generally known as "securitization." Id. It is now commonplace for institutional investors to bundle and sell (i.e., securitize) residential loans and sell shares of the resulting mortgaged-backed securities.[4] Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1072-73 (R.I. 2013). Thus, with securitization, a single residential loan may be transferred many, many times before it is repaid. Meanwhile, state real property laws remain more consistent with traditional mortgages; they typically require each assignment of a mortgage to be recorded in the county land records, with the concomitant recording fee. Id.

MERS's system of registering and tracking mortgages over the life of the loans sought to address problems that arose from mortgage securitization. Id. at 1072-73; see Citimortgage, 975 N.E.2d at 808-09 (explaining how MERS sought to "ameliorate [the] evils" of securitization of mortgages). The Supreme Court of Rhode Island explained:

> According to MERS, prior to the creation of its registration system, the constant buying and selling of mortgage-backed loans became costly and time-consuming, because each transfer required that an assignment of the mortgage be recorded in the local land evidence records. It also became

---

involved in the origination of approximately 60% of all mortgage loans in the United States." MERSCORP, Inc. v. Romaine, 861 N.E.2d 81, 83 (N.Y. 2006); see also Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 117 (2011).

[4] In Tennessee, "securitizing a note does not sever the note from the deed of trust. Under Tennessee law, the deed of trust follows the note. Whoever holds the note owns the deed." Thompson, 773 F.3d at 749.

- 4 -

difficult to determine what entity owned the beneficial interests in these loans at any given time, because those interests were bought and sold with such frequency, often leading to recording errors. The MERS® System was developed to bring efficiency and order to this increasingly complex industry.

Bucci, 68 A.3d at 1072-73 (internal citations omitted); see also MERSCORP, Inc. v. Romaine, 861 N.E.2d 81, 83 (N.Y. 2006). Put another way, the MERS® System was created to enable lenders "[t]o avoid the hassle and expense of paying county recording fees." Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 116 (Oct. 2011); see Robinson v. American Home Mortg. Servicing, Inc. (In re Mortg. Elec. Registration Sys., Inc.), 754 F.3d 772, 777 (9th Cir. 2014) ("Robinson") ("The obvious advantage of the MERS System is that it allows residential lenders to avoid the bother and expense of recording every change of ownership of promissory notes."); Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1369-70 (2010) ("By eliminating the reference to an actual mortgagee or the actual assignee, MERS estimated that it would save the originator $22.00 per loan.").

In order for a lender to benefit from the MERS tracking system, it must become a MERSCORP member. To do so, the lender subscribes to the MERS® System by paying a periodic (usually annual) membership fee or a per-transaction fee. Peterson, 53 Wm. & Mary L. Rev. at 117. In return, MERS and the member lender enter into an agreement for MERS to provide certain services.[5] Romaine, 861 N.E.2d at 83; see Mortgage Elec. Registration Sys. v. Bellistri, No. 4:09-CV-731, 2010 WL 2720802, at *6 (E.D. Mo. July 1, 2010); Bank of N.Y. v. Silverberg, 86 A.D.3d 274, 278-79 (N.Y. App. Div. 2011).

Under the MERS business model, if the original lender is a MERS member, the original lender will typically insert language in the deed of trust that designates MERS as the beneficiary as nominee for the lender and the lender's assigns.[6] The original

_____

[5] The record does not include a copy of a contract between MERS and a member lender. Therefore, any description in this opinion of the contractual relationship between MERS and a MERS member is based on other legal authorities.

[6] In some states, like Tennessee, the security instrument used is a deed of trust; in others, the security instrument used is a mortgage. "[A] beneficiary's interest under a trust deed is analogous to a mortgagee's interest under a mortgage." Brandrup v. ReconTrust Co., N.A., 303 P.3d 301, 319 (Or. 2013) (en banc). Generally, the lender in a deed of trust is referred to as the "beneficiary," and the lender in a mortgage is referred to as the "mortgagee." Under a deed of trust, the lender holds title to the property until the debt is paid. See Thompson, 773 F.3d at 750. Under a mortgage, however, no legal or equitable interest is conveyed to the mortgagee, but the mortgage "merely creates a lien that constitutes

- 5 -

lender/MERS member records that deed of trust in the county land records. The MERS member retains the promissory note and the servicing rights to the mortgage. See Dauenhauer v. Bank of N.Y. Mellon, No. 3:12-CV-01026, 2013 WL 2359602, at *3 (M.D. Tenn. 2013), aff'd, 562 Fed. Appx. 473 (6th Cir. 2014).

When the MERS member sells the note to another MERS member, the transfer of the deed of trust is not recorded in the county's land records. According to the MERS business model, there is no need to record such transfer because the named beneficiary in the deed of trust has not changed---MERS remains the stated beneficiary in the deed of trust as nominee for the lender and the lender's successor or assigns.[7] Bucci, 68 A.3d at 1073; see Bellistri, 2010 WL 2720802, at *7-8. "During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system." Romaine, 861 N.E.2d at 83. Of course, if the transfers of the deed of trust are not recorded, there are no associated recording fees.

## Tax Sale

Against that backdrop, we turn to the facts in this case. The homeowners, the Dossetts, failed to pay the 2006 property taxes on the subject property. In February 2008, Hamilton County filed a delinquent tax lawsuit in the Hamilton County Chancery Court against several property owners, including the Dossetts, who allegedly had not paid their 2006 property taxes. The Dossetts received notice of the delinquent tax lawsuit by certified mail.

Meanwhile, the county clerk charged with executing the sale conducted a public records search to determine any others with an ownership interest in the property. In the title report, the grantors, the grantees (the Dossetts), and the lender (Choice Capital) were identified. The clerk's office attempted to serve notice of the tax sale on Choice Capital at the designated address, but the certified envelope was returned as "Not Deliverable as

---

security for the underlying obligation and grants the mortgagee, upon the mortgagor's default, the right to have the property sold to satisfy the obligation." Brandrup, 303 P.3d at 319. Therefore, in jurisdictions that use deeds of trust as security instruments, MERS will typically be designated as the "beneficiary" as nominee for the lender, and in jurisdictions that use mortgages, MERS is designated as the "mortgagee" as nominee for the lender. This distinction does not affect our analysis in this case.

[7] If a note within the MERS system is sold to a lender that is not a MERS member, MERS assigns the note to the new lender, the assignment is recorded in the relevant land records, "and the loan is deactivated within the MERS system." Romaine, 861 N.E.2d at 83.

Addressed Unable to Forward." A copy of the summons was later served on Choice Capital through its registered agent.

Despite the fact that MERS was referenced in the deed of trust for the property, the County did not attempt to give notice of the delinquent tax lawsuit to MERS. As a result, MERS had no knowledge of the lawsuit.

The Dossetts never paid the 2006 property taxes on the property. As a result, in June 2010, the property was sold at a tax sale to Defendant/Appellee Carlton J. Ditto for $10,000. About a week later, the trial court entered a decree confirming the sale of the property to Mr. Ditto. The property was not redeemed within one year after the trial court confirmed the sale;[8] as a result, Mr. Ditto was presumed to have "perfect title" in the property. Tenn. Code Ann. § 67-5-2504(b) (2011).

In January 2012, about a year and a half after the tax sale was confirmed, MERS filed the instant petition against Mr. Ditto in the Hamilton County Chancery court. In the petition, MERS asked the trial court to set aside the tax sale and issue a declaratory judgment. MERS asserted that the tax sale and the trial court's decree confirming the tax sale were void *ab initio* because the County failed to give notice of the tax sale to MERS or any representative of MERS, as was constitutionally required. MERS contended in the petition that it "possessed a constitutionally-protected property right in the [p]roperty. The name and address of MERS appears of public record and, based upon a diligent search, should have been discovered by Hamilton County." MERS further claimed: "Without notice to MERS, the purported sale . . . is constitutionally invalid and is a nullity. The purported sale to Carlton J. Ditto remains a slander on the title and should be stricken from the record." MERS also sought a declaration from the trial court that MERS's interests were unaffected by the sale to Mr. Ditto and that "MERS remains the beneficiary under the Deed of Trust."

Upon motion filed by Mr. Ditto, acting *pro se*, the trial court consolidated the delinquent tax lawsuit and the lawsuit to set aside the tax sale. In this way, Hamilton County became a party to the suit.

A flurry of filings ensued. Mr. Ditto asserted in his answer to MERS's petition that MERS failed to state a claim upon which relief could be granted and that MERS did not have standing to set aside the sale because it never held a legal interest in the property.

---

[8] Under the statute in effect at the time, an interested party in Tennessee may redeem property after a tax sale within one year after the tax sale is confirmed. Tenn. Code Ann. § 67-5-2702(a) (2011) (currently Section 67-5-2701(a)(1)).

Two weeks later, Mr. Ditto filed a motion to dismiss, claiming that MERS failed to commence the lawsuit properly because it did not tender payment for the bid price plus accruing taxes and interest, a statutory prerequisite to filing a lawsuit to invalidate a tax title. Tenn. Code Ann. § 67-5-2504(c) (2011).[9]

In its response, MERS argued that the tender requirement in Section 67-5-2504(c) does not apply where the tax sale was constitutionally invalid for lack of notice to an interested party. MERS contended, "Following a constitutionally infirm sale, the requirements contained in Section 67-5-2504 cannot, and should not, bar a party from raising their constitutionally protected rights." In the alternative, MERS argued that, if the tax sale is not set aside, the trial court should enter a declaratory judgment stating that MERS's "interest was not affected by the sale, and all rights in the property it had before the sale, it still has." MERS also asked the trial court to declare that "any ownership interest Mr. Ditto achieved as a result of the purported purchase of the property at the tax sale is inferior to the rights held by MERS as beneficiary under the deed of trust."

These same arguments were repeated in subsequent filings. While Mr. Ditto's motion to dismiss was pending, MERS filed a motion for judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure.[10] In the motion, MERS maintained that the lack of notice rendered the tax sale constitutionally invalid: "The principle basis of MERS['s] claim is lack of constitutionally required notice of the tax sale, thereby violating MERS['s] due process rights." Absent such notice, MERS argued, the tax sale did not affect its interest in the property. Consequently, MERS asked the trial court to declare that, even if the tax sale were valid, "MERS remains the beneficiary under the [DOT] identifying its interest as beneficiary, unaffected in any way by the purported sale of the Property."

In response, Mr. Ditto filed his own motion for either a declaratory judgment or a judgment on the pleadings. He argued that the DOT did not grant MERS a protected property interest, so MERS was not entitled to notice under either the applicable notice statute or the principles of due process. Mr. Ditto sought a declaration that MERS has no

---

[9] That subsection provides:

> (c) No suit shall be commenced in any court of the state to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued, with interest and charges as provided in this part.

Tenn. Code Ann. § 67-5-2504(c) (2011).

[10] Tennessee Rule of Civil Procedure 12.03 provides in pertinent part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

protected rights with respect to the property and a ruling that, for that reason, MERS did not have standing to bring an action to set aside the tax sale.

At this point, Hamilton County weighed in. It filed a response to MERS's motion for judgment on the pleadings in which it agreed with Mr. Ditto's position and elaborated on it. The County asserted that, despite language to the contrary in the DOT, MERS was not a true beneficiary. The County argued that the language in the DOT on this point was ambiguous, and that an examination of the DOT in its entirety and the realities of the transaction made it clear that MERS, in fact, has no beneficial interest. The County pointed out that, in the DOT, every obligation that would traditionally be assumed by a beneficiary is undertaken by the lender, not by MERS. It also pointed out that, contrary to MERS's assertion, the DOT contains no language requiring notice to MERS. "By its own stated policy, MERS receives no payments, exercises no rights, performs no servicing or other obligations, and holds no documents. The lenders are entitled to all such rights and perform all such obligations." Thus, the County argued, MERS was not truly a beneficiary under the DOT and so was not entitled to notice of the tax sale. The County did not take a position on whether the lawsuit should be dismissed because MERS failed to tender payment at the outset.

In August 2012, the trial court conducted a hearing on the parties' cross-motions for judgment on the pleadings and Mr. Ditto's motion to dismiss. After taking the case under advisement, in September 2012, the trial court issued a written order holding in favor of Mr. Ditto and the County. The trial court held that the delinquent tax attorney had complied with both the notice requirement in the DOT and the notice provision in the tax sale statute, Section 67-5-2502. The DOT, the trial court observed, "only mentions the means by which notice shall be given to the Lender or Borrower . . . and made no mention of MERS." Furthermore, it noted, Section 67-5-2502 required the County's delinquent tax attorney to "make a reasonable search of the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and register of deeds and give notice to persons identified by the search *as having an interest in the property to be sold*." Tenn. Code Ann. § 67-5-2502(c) (2011) (emphasis added). No notice to MERS was required, the trial court concluded, because "[t]here is no indication that MERS was listed as an 'owner' of the property on record in the office of the Assessor of Property for Hamilton County."[11] Therefore, the trial court held, "by giving notice to the Dossetts and Choice Capital Funding, Incorporated, the requirements of T.C.A. § 67-5-2502 . . . were met as those were the only parties revealed in the record search who had a valid interest in the property."

---

[11] The relevant version of Section 67-5-2502 required the property owner to register the owner's own name and address with the assessor's office. Tenn. Code Ann. § 67-5-2502(b) (2011).

The trial court then addressed whether the County's failure to notify MERS rendered the tax sale constitutionally invalid. It found that this too turned on whether MERS had a valid, protected interest in the subject property. Finding no Tennessee caselaw on this issue, the trial court reviewed cases from other jurisdictions and the language in the DOT. After doing so, the trial court held that MERS did not have a protected interest in the property. It noted that MERS had no stake in the outcome of foreclosure proceedings, did not lend money to the borrower, and had no independent right to collect money from the borrower. The trial court reasoned: "MERS had only a nominal stake in the outcome of the tax foreclosure proceeding on the property. Therefore, because MERS had no true property interest, it could suffer no injury, and its due process rights were not violated by lack of notice." On this basis, the trial court denied MERS's motion for judgment on the pleadings and granted Mr. Ditto's motion for judgment on the pleadings.

Accordingly, the trial court denied MERS's request to set aside the tax sale and held that Mr. Ditto is the holder of legal title to the subject property by virtue of the tax sale and the subsequent decree confirming the sale. The trial court did not address whether the lawsuit should be dismissed for MERS's failure to tender funds prior to filing the lawsuit in violation of Section 67-5-2504(c), and did not address MERS's alternative request for declaratory relief regarding its continued interest in the property. MERS appealed.

The Court of Appeals affirmed the decision of the trial court, albeit on a different basis. Mortgage Elec. Registration Sys., Inc. v. Ditto, No. E2012-02292-COA-R3-CV, 2014 WL 24439, at *5-6 (Tenn. Ct. App. Jan. 2, 2014) ("MERS"). It concluded that MERS did not have standing to file an action to set aside the tax sale because "MERS was never given an independent interest in the property." Id. at *5. Rather, the property owners mailed payments to the current lender, "while MERS solely recouped payment for its services from the current lender and was specifically relegated to the role of nominee" for the current lender and its successors and assigns. Id. The appellate court referenced the definition of "nominee" found in Black's Law Dictionary: "A person designated to act in place of another, usu. in a very limited way" or "A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Id. (citing Black's Law Dictionary (9th ed.)). Thus, the appellate court found that MERS "did not suffer an injury by the sale of the property at issue." Id. It stated, "[T]he only injury suffered by MERS related to the future effect this case could have on its business model, which is reliant upon the avoidance of county recording fees by placing the onus on the county to provide notice to MERS instead of the current lender." Id. The appellate court deemed this injury insufficient to confer standing on MERS: "We fail to see how this is a distinct and palpable injury capable of being redressed by this court. Accordingly, we uphold the trial court's grant of Purchaser's

- 10 -

motion for judgment on the pleadings because MERS did not have standing to file suit." Id.

The Court of Appeals went on to address an issue not addressed by the trial court, Mr. Ditto's claim that he was entitled to judgment on the pleadings based on MERS's failure to comply with the tender requirement contained in Section 67-5-2504(c). The appellate court noted that MERS had not paid any funds into the court clerk's office but had indicated that it "remained willing and able to tender the funds if directed to by the trial court." Id. at *6.

The appellate court commented that the question of whether failure to comply with Section 67-5-2504(c) is fatal to a claim "has been addressed by this court with conflicting results." Id. It decided to follow the intermediate appellate court's most recent published decision on the subject, Bullington v. Greene County, 88 S.W.3d 571, 575-81 (Tenn. Ct. App. 2002). In Bullington, the appellate court held that payment tendered by the plaintiff after the lawsuit was filed constituted substantial compliance with Section 67-5-2504(c). MERS, 2014 WL 24439, at *6. Because intermediate appellate decisions to the contrary were unpublished, the Court of Appeals reasoned, they were less authoritative. Id. (quoting Tenn. Sup. Ct. Rule 4(G)(1)). Therefore, consistent with Bullington, the appellate court held that MERS's failure to tender funds prior to filing suit "was not a prerequisite for relief." Id.

Both Mr. Ditto and MERS were granted permission to appeal to this Court.

### Issues on Appeal

MERS appeals the Court of Appeals' ruling that it did not have standing to set aside the tax sale of the property based on the County's failure to give MERS notice of the sale. Mr. Ditto appeals the Court of Appeals' ruling that MERS was not required under Tennessee Code Annotated section 67-5-2504(c) to tender funds prior to filing this lawsuit.[12]

We note that, in the appeal to this Court, MERS makes the alternative argument that it was entitled to notice of the tax sale under not only the Due Process Clause of the federal Constitution but also Tennessee Code Annotated section 67-5-2502(c).[13]

---

[12] Although Hamilton County was a party in the trial court proceedings, the County did not participate in either the intermediate appeal or the appeal to this Court.

[13] At the time of the tax sale, the notice statute provided:

However, as discussed below, MERS's petition for relief did not rely on the language in this statute. Rather, the sole basis for its assertion that the tax sale was void *ab initio* was the Due Process Clause of the federal Constitution. As noted in our Standard of Review, this appeal arises from motions which test the sufficiency of MERS's petition. Since MERS's petition did not reference Section 67-5-2502(c), we decline to address whether notice to MERS was required under that statute.

### Standard of Review

This appeal arises from the trial court's grant of Mr. Ditto's Rule 12.03 motion for judgment on the pleadings, affirmed by the intermediate appellate court, as well as the intermediate appellate court's denial of Mr. Ditto's motion to dismiss. Our review of both decisions is *de novo* on the record, affording no deference to the lower courts. Both motions test the legal sufficiency of the plaintiff's complaint. See Harman v. Univ. of Tenn., 353 S.W.3d 734, 736 (Tenn. 2011). In assessing the legal sufficiency of complaint, the court "must construe it in the plaintiff's favor, 'by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts.'" Id. (quoting Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 352 n.1 (Tenn. 2008) (citing Lanier v. Rains, 229 S.W.3d 656, 660 (Tenn. 2007))). The issue of whether the complaint sets forth facts that constitute a valid cause of action is a question of law, which we also review *de novo* with no presumption of correctness. Id. at 736-37.

To the extent that the issues on appeal require the interpretation of a statute, this also presents a question of law subject to *de novo* review. Hayes v. Gibson Cnty., 288 S.W.3d 334, 337 (Tenn. 2009).

### ANALYSIS

We consider first the threshold issue of whether MERS was required under Tennessee Code Annotated section 67-5-2504(c) to tender payment prior to filing this

---

> (c) The delinquent tax attorney shall make a reasonable search of the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and register of deeds and give notice to persons identified by the search *as having an interest in the property to be sold*.

Tenn. Code Ann. § 67-5-2502(c) (2011) (emphasis added). The statute was amended effective July 1, 2015. Under the amended statute, the delinquent tax attorney must give notice to all interested persons, which includes "a person or entity named as nominee or agent of the owner of the obligation that is secured by the deed or a deed of trust and that is identifiable from information provided in the deed or a deed of trust . . . ." Id. § 67-5-2502(c)(1)(B) (Supp. 2015).

lawsuit. We then go on to determine whether MERS had a property interest that entitled it to notice of the tax sale under the Due Process Clause of the federal Constitution.

## Tender Requirement

Mr. Ditto argues that this lawsuit is an action "to invalidate [a] tax title to land," so it is governed by Tennessee Code Annotated section 67-5-2504. Subsection (c) of that statute provides:

> (c) No suit shall be commenced in any court of the state *to invalidate any tax title to land* until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued, with interest and charges as provided in this part.

Tenn. Code Ann. § 67-5-2504(c) (2011) (emphasis added). Thus, prior to the commencement of any suit "to invalidate any tax title to land," the plaintiff must pay or tender to the court clerk "the amount of the bid and all taxes subsequently accrued, with interest and charges . . . ." Id. Mr. Ditto contends that MERS's failure to comply with this provision is fatal and the petition should be dismissed on that basis without reaching the other issues.

In response, MERS argues that this statute is inapplicable where the tax title is alleged to be void *ab initio* for lack of proper notice to an interested party. Section 67-5-2504(b) states that the "validity" of a tax sale cannot be challenged except on specific grounds: "by proof that the land was not liable to sale for taxes, or that the taxes for which the land was sold have been paid before the sale or that there was substantial noncompliance with mandatory statutory provisions relating to the proceedings in which the parcel was sold . . . ." Id. § 67-5-2504(b) (2011). MERS asserts that it does not seek to "invalidate" the tax sale on any of these bases; rather, it challenges the sale on constitutional grounds. Therefore, MERS insists, the statutory prerequisite subsection (c) is inapplicable.

At the outset, we examine MERS's complaint, entitled "Petition to Set Aside Tax Sale and For Declaratory Judgment." The petition asserts *inter alia* that the tax sale to Mr. Ditto is void and of no effect because both the tax sale and Mr. Ditto's tax deed resulted from unconstitutional proceedings. In the petition, MERS claimed that it held a protected interest in the subject property; consequently, under the Due Process Clause of the United States Constitution, it was entitled to notice of the tax sale of the property. The petition does not cite Section 67-5-2504(b), nor does it contain a claim that the taxes were not due, that they had been paid, or that "there was substantial noncompliance with mandatory statutory provisions relating to the proceedings in which the parcel was sold."

- 13 -

Id. The petition filed by MERS is not premised on any of the grounds identified in the statute; rather, it challenges the tax sale and the proceedings leading up to the sale based only on constitutional grounds.

The issue, then, is whether the pre-suit tender requirement in Section 67-5-2504(c) applies where the plaintiff files a lawsuit that seeks to have a tax sale declared void due to lack of constitutionally-required notice, as opposed to a lawsuit that seeks to have the tax sale "invalidated" on one of the grounds set forth in Section 67-5-2504(b). With this understanding, we will review the cases on whether the statutory pre-suit tender requirement is applicable where the tax sale is alleged to be void *ab initio*.

The issue was squarely addressed by the Court of Appeals in Bass v. Wilkins, 1989 WL 11736 (Tenn. Ct. App. Feb. 15, 1989). In Bass, the county filed suit against the property owners for delinquent taxes. By the time the tax suit was filed, the property owners were deceased. The county did not notify the owners' heirs of either the tax delinquency lawsuit or the resulting tax sale. Bass, 1989 WL 11736, at *1. The heirs later filed suit against the tax-sale purchaser to "invalidate and set aside [the] tax sale on realty as a cloud on the title to their property." Id. The trial court held that the sale was invalid and restored legal title to the heirs. After that, the tax-sale purchaser filed a motion to set aside the judgment and dismiss the heirs' lawsuit because they had not paid into court the sums required under Section 67-5-2504(c). The trial court denied the motion, and the purchaser appealed.

The appellate court in Bass framed the issue on appeal as "whether the chancellor erred in invalidating the tax sale when the plaintiffs did not pay or tender to the clerk of the court the amount of defendant's bid for the property and other charges as required by T.C.A. § 67-5-2504 (1983)." Id. It held that the chancellor did not err in failing to require pre-suit tender of payment. Id. at *3. In reaching that conclusion, the Bass court relied on several Tennessee cases.

The Bass court cited West v. Jackson, 186 S.W.2d 915 (Tenn. Ct. App. 1944), in which the property owner was not notified in advance of the tax sale of the property. The court in West held that the resulting tax deed was void and removed the tax deed as a cloud on the owner's title. West, 186 S.W.2d at 917. The West court explained its reasoning:

> It is evident that although a proceeding [is] *in rem* the procedure is the same as in any other Chancery cause—the defendant must be before the court by actual or constructive service of process. If this is not done, there would be a mere confiscation of property.

….

> . . . The present case is controlled by the opinion in <u>Tennessee Marble & Brick Co. v. Young</u>, . . . 163 S.W.2d 71, 75[(Tenn. 1942)] wherein it is said: "A decree may be assailed because of invalidity at any time. A void decree is in the same plight as though it never existed."

<u>Id.</u> Absent notice, the <u>West</u> court held, the tax decree was void and the predecessor to Section 67-5-2504 did not apply. <u>Id.</u> (citing <u>Tennessee Marble & Brick Co. v. Young</u>, 163 S.W.2d 71, 75 (Tenn. 1942) (holding that the statute of limitations in predecessor to Section 67-5-2504 not applicable where tax sale is allegedly void for lack of notice)).

The <u>Bass</u> court also cited <u>Rast v. Terry</u>, 532 S.W.2d 552 (Tenn. 1976), which involved not only the pre-suit tender requirement in Section 67-5-2504 but also the statute of limitations contained in that same statute. Tenn. Code Ann. § 67-5-2504(d). In <u>Rast</u>, the Court considered whether the three-year statute of limitations for a suit to invalidate tax title applied when the tax decree was alleged to be void. The <u>Rast</u> Court reasoned that suits to collect delinquent taxes "have as their objective the enforcement of tax liens, but not by confiscation. Where the taxpayer is not properly before the court the resulting decree and sale is a nullity as to him and may be assailed at any time." <u>Rast</u>, 532 S.W.2d at 555. Construing Section 67-5-2504, it held that "the statute presupposes a valid vestiture of title in the purchaser." <u>Id.</u> The Court concluded: "If it be established on remand that the tax sale was void, [the statute of limitations in] § 67-2025 T.C.A is not applicable." <u>Id.</u> Thus, the <u>Bass</u> court observed, the Supreme Court in <u>Rast</u> "made it clear that the statutes regarding invalidation of tax sales are not applicable when the decree of sale is void." <u>Bass</u>, 1989 WL 11736, at *3 (citing <u>Rast</u>, 532 S.W.2d at 555); <u>see also</u> <u>Naylor v. Billington</u>, 378 S.W.2d 737, 740-41 (Tenn. 1964) (holding that, when a tax sale is void for lack of notice, the trial court was without jurisdiction to confirm the sale and statutes governing suits to invalidate an otherwise valid tax sale are inapplicable); <u>Lawrence Cnty. v. White</u>, 288 S.W.2d 735, 739 (Tenn. 1956) (noting that, when a judgment is void, "then anything based on this void judgment would likewise be of no effect . . . [and] such a decree may be assailed at any time and it is in the same plight as though it never existed"); <u>Watson v. Waters</u>, 694 S.W.2d 524, 526-27 (Tenn. Ct. App. 1984) (holding that taxpayer is not limited to challenges listed in Section 67-5-2504(b) in challenging tax sale for lack of constitutionally-required notice).

Accordingly, in reliance on <u>West</u>, <u>Rast</u>, <u>Tennessee Marble</u>, and the other cases cited, the <u>Bass</u> court held "that where the decree affirming the sale is void, payment or

tender of the amount bid as required by the statute is not a prerequisite for relief." [14] Id. at \*3. Other cases have recognized the general proposition that a tax sale conducted without proper notice to interested parties is void and a nullity. Wilson v. Blount Cnty., 207 S.W.3d 741, 747 (Tenn. 2006) (citing Rast, 532 S.W.2d at 555); Morrow v. Bobbit, 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996) (raising the issue of notice *sua sponte* because "proper notice is necessary in order to confer subject matter jurisdiction on the court in suits to enforce tax liens"); see also Robinson, 754 F.3d at 785 (interpreting California law, holding that pre-suit tender of payment is not required when the foreclosure sale or trustee's deed is void).

This case is analogous to the situation in Bass. Here, MERS does not seek to invalidate the tax sale based on any of the grounds listed in Section 67-5-2504(b). Rather, it asserted in its petition that the tax sale to Mr. Ditto is void because the County failed to give MERS notice required by the Due Process Clause of the federal Constitution. Thus, MERS's lawsuit essentially claims that the trial court was without subject matter jurisdiction to confirm the tax sale and that its decree confirming the sale "is a nullity . . . and may be assailed at any time."[15] We hold that when a plaintiff claims to have a protected interest in the subject property and files suit to have the tax sale of the property declared void *ab initio* based on lack of constitutionally-required notice, the pre-suit tender requirement contained in Section 67-5-2504(c) is inapplicable to the petition to set aside the tax sale. Accordingly, we reject Mr. Ditto's argument that the trial court should have granted his motion to dismiss based on MERS's failure to comply with the tender requirement in Section 67-5-2504(c).

---

[14] A seemingly contrary conclusion was reached in Ewell v. Hill, No. 02A01-9608-CH-00178, 1998 WL 18142 (Tenn. Ct. App. Jan. 21, 1998). The owners of property filed complaint to set aside tax sale, claiming that they did not receive propert notice and that the property taxes had been paid. The appellate court declined to reach merits of case because owners had not complied with statutory pre-suit tender requirement. Ewell, 1998 WL 18142, at \*2-3. But the Ewell court did not differentiate between the petitioners' claim that the tax sale was void for lack of notice and the claim that the sale was invalid because the taxes had been paid. Nevertheless, to the extent that the holding in Ewell is contrary to our holding in this case, we overrule it.

[15] This Court has recently upheld the principle that a void judgment may be "assailed at any time." Turner v. Turner, --- S.W.3d ---, 2015 WL 6295546, at \*18 (Tenn. Oct. 21, 2015). In Turner, we held that "the reasonable time filing requirement [in Rule 60.02 of the Tennessee Rules of Civil Procedure] does not apply to bar motions [to set aside a judgment] filed under Tennessee Rule 60.02(3) [related to void judgments]," absent exceptional circumstances. Id. MERS's challenge to the decree confirming the sale in the instant case is essentially a motion to set aside a void decree pursuant to Rule 60.02(3), so the reasonable time requirement in the rule does not apply, and the judgment can be assailed without regard to any time limitation period.

## MERS Interest in Property

As noted previously, the trial court below held: "MERS had only a nominal stake in the outcome of the tax foreclosure proceeding on the property. Therefore, because MERS had no true property interest, it could suffer no injury, and its due process rights were not violated by lack of notice." The Court of Appeals viewed the issue as somewhat different from the question addressed by the trial court. It held that MERS sustained no injury or damage from the tax sale so it did not have standing to bring this lawsuit. In order to establish standing, the appellate court explained, MERS had to show that it suffered "a distinct and palpable injury" capable of being redressed by the lawsuit. MERS, 2014 WL 24439, at *4 (quoting Lynch v. City of Jellico, 205 S.W.3d 384, 395 (Tenn. 2006) (citations omitted)). It found that MERS could not establish such an injury because MERS had no interest in the property:

> Despite the alleged assignment [in the deed of trust], MERS was never given an independent interest in the property. See generally [Mortgage Elec. Registration Sys. v. ]Saunders, 2 A.3d [289,] 296-97 [(Me. 2010)] (holding that MERS never obtained an independent interest in the subject property). The Dossetts were instructed to mail payments and notices to the current lender that held the promissory note, while MERS solely recouped payment for its services from the current lender and was specifically relegated to the role of nominee relative to the interests transferred by the Dossetts. Nominee is defined, by Black's Law Dictionary, 9th edition, as "[a] person designated to act in place of another, usu. in a very limited way" or as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."

Id. at *5 (noting that MERS had argued in a prior case that it was "contractually prohibited from exercising any rights with respect to the mortgages . . . without the authorization of the members," quoting Mortgage Elec. Registration Sys., Inc. v. Nebraska Dept. of Banking and Fin., 270 Neb. 529, 704 N.W.2d 784, 787 (Neb. 2005)). The appellate court found that MERS had no interest in the property and that its only injury was future damage to its business model. This injury, it held, was not a "distinct and palpable injury" sufficient to confer standing on MERS. Id.

Our view of the pivotal issue is more in line with that of the trial court. Under the circumstances presented in this case, rather than the standing question discussed by the Court of Appeals, we think that the issue is better framed as whether MERS has a

- 17 -

property interest that is protected under the Due Process Clause.[16] This is an issue of first impression in this Court. We go on, then, to address whether MERS has an interest in the subject property that cannot be abridged without due process of law.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 2 ("the Due Process Clause").[17] The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." Daniels v. Williams, 474 U.S. 327, 331 (1986).

Under the Due Process Clause, a State cannot deprive a person of his or her interest in "life, liberty, or property" unless it first provides "notice reasonably calculated, under all the circumstances, to apprise [the interested party] of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). To effectuate this, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Id. at 315; Turner v. Turner, --- S.W.3d ---, 2015 WL 6295545, at *10 (Tenn. Oct. 21, 2015). "As a general rule, an individual should be given a hearing before being deprived of a significant property interest." Lee v. Lad, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

Due process protections clearly apply when the State seeks to sell a taxpayer's real property in satisfaction of a tax obligation. In Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), the mortgagor/borrower failed to pay the property taxes on the

---

[16] As discussed below, MERS has been involved in litigation across the country. In some of those cases, on different facts, courts have addressed standing as a threshold issue. See, e.g., Mortgage Elec. Registration Sys., Inc. v. Saunders, 2 A.3d 289, 297 (Me. 2010) (holding that MERS lacked standing to initiate judicial foreclosure action, even though the DOT gave MERS the right to foreclose on the mortgage as the "mortgagee of record"); CPT Asset Backed Certificates, Series 2004–EC1 v. Cin Kham, 278 P.3d 586, 592-93 (Okla. 2012) (holding that putative noteholder lacked standing to foreclose because MERS lacked authority to assign the note, though it arguably had authority to assign the mortgage). Under the facts of this case, we believe that the better course is to directly address the nature of MERS's interest in the property for purposes of the Due Process Clause.

[17] MERS does not assert a claim under the due process clause of the Tennessee Constitution. See Tenn. Const. art. I, § 8. We note, however, that this provision of our state constitution has been described as "synonymous with the due process provisions of the federal constitution." Lynch v. City of Jellico, 205 S.W.3d 384, 391 (Tenn. 2006) (citing Willis v. Tenn. Dep't of Corr., 113 S.W.3d 706, 711 n.4 (Tenn. 2003)).

mortgaged property, so the county initiated proceedings to sell the property at a tax sale. The county provided notice of the sale in accordance with an Indiana statute that required notice to the mortgagor by certified mail but only constructive notice by publication to all other interested parties, including the mortgagee/lender. The mortgagee did not see the notice by publication and did not receive actual notice of the tax sale. The property was sold at the tax sale without objection. Mennonite, 462 U.S. at 794.

Years later, after the period of redemption for the tax sale expired, the tax-sale purchaser of the property filed an action to quiet title to the property against claims made by the mortgagee. Id. at 795. The mortgagee in Mennonite objected; it argued that the tax sale was invalid because the mortgagee was not given adequate notice of the tax sale. It contended that, by allowing for publication notice to the mortgagee, the state notice statute violated the mortgagee's due process rights. Id. The lower courts found that notice to the mortgagee by publication was adequate and so upheld the notice statute. Id.

The Supreme Court reversed. At the outset, it noted that a mortgagee has "a substantial property interest that is significantly affected by a tax sale." Id. at 798. Because it had such an interest in the property, the Mennonite Court held, the mortgagee was entitled to notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 795 (quoting Mullane, 339 U.S. at 314). The Court reasoned:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.

Id. at 798 (internal citation omitted). On that basis, the Court held that "the manner of notice provided to [the mortgagee] did not meet the requirements of the Due Process Clause of the Fourteenth Amendment." Id. at 800.

The Mennonite Court clarified the manner of notice required for one who has a property interest that is protected under the Due Process Clause. Its holding was premised on the fact that "a mortgagee clearly has a legally protected interest," but the Court did not specifically analyze the nature of the mortgagee's interest. Id. at 798. So the Mennonite case tells us the type of notice MERS would have been due if its interest in the subject property warrants due process protection, but it does not answer the central issue presented here, namely, whether MERS has a protected property interest.

- 19 -

To determine whether MERS has a property interest that is protected under the Due Process Clause, we look first to the language in the DOT in this case, which describes various parties' interests in the property. The DOT names the Dossetts as the borrowers, Choice Capital as the lender, Robbie McLean as the trustee, and MERS as "a separate corporation that is acting solely as a nominee for [Choice Capital] and [Choice Capital's] successors and assigns." It describes MERS as "the beneficiary under this Security Instrument." Going further, the DOT states that MERS is "[t]he beneficiary of this Security Instrument . . . (solely as nominee for [Choice Capital] and [Choice Capital's] successors and assigns) and the successors and assigns of MERS."

The DOT also provides that the "Borrower irrevocably grants and conveys [the subject property] to Trustee, in trust, with power of sale" in order to secure payment of the note. It adds the proviso that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument." In its capacity as nominee for the lender, MERS may exercise some rights of the lender:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for [Choice Capital] and [Choice Capital's] successor's and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [p]roperty; and to take any action required of [Choice Capital] including, but not limited to, releasing and cancelling this Security Instrument.

This provision purports to give MERS the right to foreclose on the property on behalf of the lender and the right "to exercise any or all of those interests [granted by Borrower]." The remaining provisions of the 14-page DOT set forth the covenants between the Dossetts (borrowers) and Capital Choice (lender), without any reference to MERS.

In summary, then, the DOT indicates that MERS is the beneficiary but acts solely as the nominee for the lender and its successors or assigns, holds only legal title to the interests granted by the borrowers in the DOT, but if necessary to comply with law or custom may exercise some rights of the lender such as foreclosing on the property. We confess some perplexity at the mishmash of descriptive terms and qualifiers in the DOT regarding MERS.

Apparently this is not an unusual reaction to the opaque language in the DOT. The provisions concerning MERS in the DOT in this case are standardized and are widely used elsewhere in deeds of trust involving MERS. Courts in other jurisdictions

have also found the language notable in its lack of clarity.  See, e.g., Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 813-14 (Ind. 2012) (description of MERS in deed of trust as both "nominee" and "mortgagee" is ambiguous).  Perhaps for this reason, "[t]here has been a wave of litigation in state and federal courts challenging various aspects of the MERS System."  Robinson, 754 F.3d at 778.

A host of MERS-related issues have been debated in both state and federal courts, though most of the litigation has taken place in state court. As discussed below, "[t]he results under state law have been inconsistent."[18]  Id. (citing David P. Weber, *The Magic of the Mortgage Electronic Registration System:  It Is and It Isn't*, 85 Am. Bankr. L.J. 239, 246-56 (2011) (cataloguing the "schizophrenic position of state courts" on issues relating to the MERS System)).

The Sixth Circuit Court of Appeals commented on the numerous inconsistent state law rulings regarding MERS in Thompson v. Bank of America, N.A., 773 F.3d 741 (6th Cir. 2014).  In Thompson, the mortgagor/borrower, Ms. Thompson, faced foreclosure. She sought to renegotiate her repayment terms with the successor lender, a MERS member.  When the successor lender refused to renegotiate, Ms. Thompson filed suit against it and against MERS as well, asserting fraud and other claims for relief. Thompson, 773 F.3d at 747.  The district court dismissed her complaint on its face, and Ms. Thompson appealed.

On appeal, Ms. Thompson argued that the securitization of her loan and MERS's involvement in the transaction made the loan fraudulent:

> Thompson correctly states that MERS disclaims any ownership interest in the notes that pass through its databanks.  She argues that because MERS never held title to the property and never processed funding or payments between herself and the unnamed creditors, any assignment that was processed through MERS was a "sham" that generated a "wild deed."  In fact, Thompson claims that the defendants' use of MERS "is at least circumstantial evidence of the intention to commit fraud" because its only purpose is "to cover and shield illegal transactions."

Id. at 748.  In considering this argument, the appellate court in Thompson pointed out a recent "spate of civil actions" involving MERS.  It viewed many of them as "scattershot affairs, tossing myriad (sometimes contradictory) legal theories at the court to see what sticks."  Id.  It observed that "courts have generally upheld the use of MERS in the

---

[18] The Robinson court noted that "[f]ederal courts, applying state law, have reached similarly disparate results."  Robinson, 754 F.3d at 779 (comparing cases).

transfer of mortgage notes" and have "upheld language, like that found in Thompson's deed of trust, that grants MERS the power to act as agent for any valid note holder, including assigning a deed and enforcing a note." Id. at 749-50 (footnote omitted) (citing Samples v. Bank of Am., N.A., No. 3:12-CV-44, 2012 WL 1309135, at *4 (E.D. Tenn. 2012) (collecting cases)). The Sixth Circuit rejected Ms. Thompson's assertion that MERS's involvement in the transaction was a basis on which to avoid her obligation to repay the loan, and so it affirmed the district court's dismissal of her lawsuit.

As noted in Thompson, many courts have upheld MERS's involvement in mortgage transactions as beneficiary "solely as nominee" of the lender. Some of these hold that MERS's designation as beneficiary "solely as nominee" for the lender creates an agency relationship between MERS and the lender. This agency relationship, they conclude, gives MERS the authority to act on behalf of any valid note holder, so MERS can validly assign a deed of trust or enforce a note on behalf of the lender.[19] See Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 370 (D. Mass. 2011) ("The term 'nominee' in fact connotes a narrow form of agency: a 'person designated to act in place of another, usu[ally] in a very limited way.'" (quoting Black's Law Dictionary (9th ed. 2009))); Golliday v. Chase Home Fin., LLC, No. 1:10-CV-532, 2011 WL 4352554, at *7 (W.D. Mich. Aug. 23, 2011) ("The debt is held by the lender, and the security is held by the lender's nominee, MERS, as the lender's agent."); Samples, 2012 WL 1309135, at *4 ("Several courts have noted that such language [in the deed of trust] explicitly grants MERS the power to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note."); Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 270 (2011) (holding that, while MERS did not have "its own right to assign the note, since it had no interest in the note to assign," it had the power to assign the note as the lender's "nominee" or "agent"); Edelstein v. Bank of N.Y. Mellon, 286 P.3d 249, 258

_____

[19] Other courts have held to the contrary, that MERS's designation in the deed of trust as beneficiary as nominee for the lender does not give it the power to assign a deed of trust. These courts reason that MERS never held authority to assign the promissory note, which evidences the actual debt, and that the note and the security instrument cannot be transferred separately, i.e., they cannot be "split." See Summers v. PennyMac Corp., 2012 WL 5944943, at *5 (N.D. Tex. Nov. 28, 2012) (explaining the "split-the-note" theory); McCarthy v. Bank of Am., NA, No. 4:11-CV-356-A, 2011 WL 6754064, at *4 (N.D. Tex. Dec. 22, 2011) ("MERS never held the promissory note, thus its assignment of the deed of trust . . . separate from the note had no force"); Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623-24 (Mo. Ct. App. 2009) (concluding that MERS's assignment of the deed of trust "separate from the note had no force," cited in McCarthy); see also In re Thomas, 447 B.R. 402, 412 (Bankr. D. Mass. 2011) (applying Massachusetts law and holding that "[w]hile the assignment purports to assign both the mortgage and the note, MERS . . . was never the holder of the note, and therefore lacked the right to assign it. . . . MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record"); In re Wilhelm, 407 B.R. 392, 404 (Bankr. D. Idaho 2009) (applying Idaho law and holding that MERS is not authorized "either expressly or by implication" to transfer notes as the "nominal beneficiary" of the lender).

(Nev. 2012) ("MERS holds an agency relationship with [the lender] and its successors and assigns with regard to the note."); see also Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1044 (9th Cir. 2011); In re Mortg. Elec. Registration Sys. Litig., MDL No. 09-2119-JAT, 2011 WL 4550189, at *3-4 (D. Ariz. Oct. 3, 2011); Ciardi v. Lending Co., Inc., No. CV 10-0275-PHX-JAT, 2010 WL 2079735, at *3 (D. Ariz. May 24, 2010); Bank of N.Y. v. Raftogianis, 13 A.3d 435, 447-50 (N.J. Super. Ch. 2010).

Most of these cases have addressed whether MERS has the power to assign a deed of trust, foreclose on a note, or otherwise exercise the interests of the lender. They have not addressed the precise issue presented here, namely, whether MERS *itself* has an interest in the subject property that is subject to due process protections. Nevertheless, as will be seen below, many of these cases are useful to our analysis because they discuss MERS's role in the overall transaction as that of an agent for the lender or successor lender.

Courts that have considered whether MERS has an interest in the subject property under the Due Process Clause have been divided. Many have held that the deed of trust language naming MERS as beneficiary as nominee for the lender does not grant MERS a protected interest in the property. For example, in Landmark National Bank v. Kesler, 216 P.3d 158, 167 (Kan. 2009) ("Landmark"), the mortgagor/borrower had two mortgages on the same property.[20] The first mortgage was with Landmark National Bank ("Landmark") and the second was with Millenia Mortgage Corporation ("Millenia"). Through MERS, Millenia assigned the second mortgage to Sovereign Bank.

In April 2006, the mortgagor in Landmark filed a petition in bankruptcy, named Sovereign as a creditor, and indicated his intent to surrender the property. Landmark, 216 P.3d at 161. Landmark, as first mortgagee, filed a foreclosure petition in which it named the mortgagor and Millennia as defendants. Landmark did not notify either Sovereign or MERS of the foreclosure proceedings, even though the transaction documents designated MERS as the mortgagee solely as nominee for Millennia and Millennia's successors and assigns. Id. No answer was filed, so the trial court entered a default judgment and the property was sold.

In November 2006, Landmark filed a petition to confirm the foreclosure sale. Id. That same day, Sovereign filed an answer to Landmark's prior foreclosure petition and asserted its interest in the property as Millennia's successor in interest. Sovereign also moved to set aside the default judgment and objected to the confirmation of the sale,

---

[20] In Kansas, mortgages, rather than deeds of trust, are used in mortgage transactions. See supra note 6. For this reason, the security instrument involved in Landmark designated MERS as the "mortgagee" for the lender and its assigns, rather than a "beneficiary."

asserting that MERS was a contingent necessary party to the lawsuit. Because Landmark did not name MERS as a defendant in the foreclosure petition, Sovereign claimed, Sovereign did not receive notice of the foreclosure proceedings. Id. at 161-62.

Several weeks later, MERS filed a motion to intervene and a motion to join in Sovereign's motion to set aside Landmark's default judgment. The trial court in Landmark entered an order finding that MERS was not a real party in interest and holding that Landmark was not required to name MERS as a party in the foreclosure action. "The court found that MERS served only as an agent or representative for Millennia." Id. at 162. Therefore, the trial court denied MERS's motions to intervene and to set aside the default judgment, and it confirmed the foreclosure sale. Sovereign and MERS appealed. Id.

To decide the appeal in Landmark, the Supreme Court of Kansas considered a deed of trust in which the MERS-related provisions were nearly identical to the DOT in the instant case. Echoing the cases cited above, the Kansas Court held that the provisions stating that MERS was "nominee" for the lender and its assigns described an agency relationship:

> The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. . . .

> The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer. . . . Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting "solely" as the nominee of the lender.

Id. at 166 (citing In re Sheridan, 2009 WL 631355, at *4 (Bankr. D. Idaho March 12, 2009) (MERS "acts not on its own account. Its capacity is representative"); Mortgage Elec. Registration Sys., Inc. v. Southwest, 301 S.W.3d 1, 4 (2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent."); LaSalle Bank Nat. Ass'n v. Lamy, 12 Misc.3d 1191, 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (Sup. 2006) (unpublished opinion) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")) The Landmark Court observed pointedly that MERS had "argued in another forum that it is *not* authorized to engage in the practices

that would make it a party to either the enforcement of mortgages or the transfer of mortgages." Id. at 168 (citing Mortgage Elec. Reg. Sys. v. Nebraska Dep't of Banking, 704 N.W.2d 784, 787 (Neb. 2005)). For these reasons, the Landmark Court affirmed the trial court's denial of MERS's motion to intervene and to set aside the foreclosure sale. Id. at 169.

The Landmark Court also considered the related issue of whether the trial court's refusal to join MERS as a defendant in the judicial foreclosure action violated MERS's constitutional due process rights. It held that MERS's due process rights were not violated. Absent a "protected property or liberty interest," the Landmark Court noted, "there can be no due process violation." Id. at 169 (citing State ex rel. Tomasic v. Unified Gov't of Wyandotte Cnty./Kansas City, 265 Kan. 779, 809, 962 P.2d 543 (1998)). It explained its conclusion that MERS had no protected property interest:

> The Due Process Clause does not protect entitlements where the identity of the alleged entitlement is vague. A protected property right must have some ascertainable monetary value. Indirect monetary benefits do not establish protection under the Fourteenth Amendment. An entitlement to a procedure does not constitute a protected property interest.

Id. (citing Castle Rock v. Gonzales, 545 U.S. 748, 763 (2005)). The Court commented that MERS had made no attempt to demonstrate "that it possessed any tangible interest in the mortgage beyond a nominal designation as the mortgag[ee]. It lent no money and received no payments from the borrower. It suffered no direct, ascertainable monetary loss as a consequence of the litigation." Id. at 169-70. Because MERS had not established that it had a protected property interest, the Landmark Court held, there was no violation of the Due Process Clause. Id.

Similarly, in Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas, Inc., 301 S.W.3d 1 (Ark. 2009) ("Southwest Homes"), the mortgagor/borrowers had two mortgages on their home, the first of which was a MERS mortgage. They defaulted on the second mortgage, so the holder of the second mortgage petitioned for foreclosure. In the petition, it named as defendants the borrowers, the first mortgage holder, and the county tax collector; it appears from the opinion that MERS was named as a defendant but was not given notice of the proceedings. Southwest Homes, 301 S.W.3d at 2. After the foreclosure sale, MERS filed a motion to it set aside; MERS argued that it was a necessary party to the foreclosure action and entitled to notice. The trial court disagreed and denied the motion. MERS appealed.

On appeal in Southwest Homes, MERS argued that it was a necessary party to the foreclosure action because "it held legal title to the property and, therefore, it was a

necessary party to any action regarding title to the property." Id. The Supreme Court of Arkansas rejected that argument. Looking at the roles of the various parties, the Southwest Homes Court observed that "the deed of trust provides that all payments are to be made to the lender, that the lender makes decisions on late payments, and that all rights to foreclosure are held by the lender. . . . MERS did not service the loan in any way." Id. at 3. The Court rejected MERS's argument that it could act independently of the lender, stating that "[n]othing in the record shows that MERS had authority to act" on behalf of the first mortgage holder. Id. at 4. The Court noted that the trustee, not MERS, held legal title to the property under Arkansas law. Id. It found that MERS was not a true beneficiary, despite the designation in the deed of trust: "The deed of trust did not convey title to MERS. Further, MERS is not a beneficiary, even though it is so designated in the deed of trust. [The first mortgage holder], as the lender on the deed of trust, was the beneficiary." Id. The Court concluded that MERS was not a necessary party to the foreclosure action because it had "no interest to protect." Id. at *5.

Other courts have held likewise, that MERS is not the true beneficiary of the deed of trust, even if it was named beneficiary therein; it is solely a nominee and has no property interest. In Weingartner v. Chase Home Finance, LLC, 702 F. Supp. 2d 1276, 1280 (D. Nev. Mar. 15, 2010), the mortgagor/borrowers brought a *pro se* action for wrongful foreclosure against a lender and its counsel, raising fourteen different claims. The defendants filed a motion to dismiss. In addressing the issues, the district court described the deed of trust language naming MERS as the "nominee" and "beneficiary" as "a source of confusion." Looking at MERS's role, the court gave a cogent explanation for its conclusion that MERS was, in fact, merely an agent for the lender:

This unorthodox usage of the word "beneficiary" causes all manner of havoc upon foreclosure. Oftentimes, it is clear that defendants in these actions do not understand the source of the confusion themselves, as they use the word "beneficiary" without attempting to untangle the confusion. Black's gives three definitions for this word. The first definition is the most common one: "A person for whose benefit property is held in trust; esp., one designated to benefit from an appointment, disposition, or assignment (as in a will, insurance policy, etc.), or to receive something as a result of a legal arrangement or instrument." [Black's Law Dictionary 165 (8th ed. 2004)]. From this most common definition of the word, plaintiffs typically conclude that because MERS does not stand to benefit directly from the foreclosure and has no right to sue on the promissory note (which is almost always true), that MERS cannot possibly be a "beneficiary." *It is correct that MERS is not a beneficiary. MERS is the nominee of the beneficiary.* Often, the true beneficiary (the lender/nominator) will obfuscate this distinction on the deed of trust by

referring to MERS as the "beneficiary of record." This is a fiction. MERS is not a beneficiary in any ordinary sense of the word. Calling MERS a beneficiary is what causes much of the confusion. To a large extent, defendants in these actions have brought this mass of litigation upon themselves by this confusing, unorthodox, and usually unnecessary use of the word "beneficiary" to describe MERS'[s] role. A lender/nominator need only refer to MERS as a "nominee." This is sufficient to establish that MERS is the agent of the lender with respect to administration of the deed of trust.

Weingartner, 702 F. Supp. 2d at 1280 (emphasis added); accord James v. ReconTrust Co., 845 F. Supp. 2d 1145, 1165 (D. Or. 2012) (holding that MERS is not the beneficiary of the deed of trust under Oregon law, despite the language in the deed of trust; it is "nothing more than an agent (or nominee) for the real beneficiary, which is the lender or its successor"); Mortgage Elec. Registration Sys. v. Saunders, 2 A.3d 289, 294-97 (Me. 2010) (holding that MERS cannot foreclose because it is not a mortgagee under applicable law, and it lacks standing to sue because it does not have an independent interest in the loan; MERS functions solely as a nominee); Pilgeram v. Greenpoint Mortg. Funding, Inc., 313 P.3d 839, 843 (Mont. 2013) (holding that MERS is not the beneficiary under the Montana Small Tract Financing Act because "the lender, not MERS, is the entity to whom the secured obligation flows"); Brandrup v. ReconTrust Co., N.A., 303 P.3d 301 (Or. 2013) (holding that MERS was not the beneficiary of a deed of trust under the Oregon Trust Deed Act absent conveyance to MERS of the beneficial right to repayment and that MERS could not hold or transfer legal title to the deed as the lender's nominee); Bain v. Metropolitan Mortg. Grp., Inc., 285 P.3d 34, 51 (Wash. 2012) (holding that MERS was not a beneficiary under the Washington Deed of Trust Act when it did not hold the promissory note secured by the deed of trust and that "characterizing MERS as the beneficiary has the capacity to deceive" and may give rise to an action under the state's Consumer Protection Act). Thus, in interpreting deeds of trust nearly identical to the DOT in this case, these courts held that MERS was not the beneficiary under the deed of trust and, as nominee, was simply an agent or "straw man" for the lender. As a result, these courts held that MERS did not have its own protected interest in the subject property. Landmark, 216 P.3d at 166.

In the course of considering these issues, some courts have pointed out that it is axiomatic that a party cannot simultaneously be both agent and principal. In Culhane, the Massachusetts court stated: "Courts and scholars alike have expressed reservation, even bewilderment, as to MERS's claim to be both mortgagee and nominee or, as it has been generalized, both principal and agent." Culhane, 826 F. Supp. 2d at 369 ("MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best." (quoting In re Agard, 444 B.R. 231, 240 (Bankr. E.D.N.Y. 2011), vacated in part

sub. nom. Agard v. Select Portfolio Servicing, Inc., No. 11-CV-1826 JS, 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012)); Bank of N.Y. v. Bailey, 951 N.E.2d 331, 332 n.3 (Mass. 2011) ("In this case, we are not faced with the issue whether MERS may properly be both the mortgagee and an agent of the mortgagee, and we do not decide in which capacity MERS acted here."); Landmark, 216 P.3d at 165-66 (2009) (stating that MERS defines its role "in much the same way that the blind men of Indian legend described an elephant—their description depended on which part they were touching at any given time"); Peterson, 53 Wm. & Mary L. Rev. at 118 ("On the one hand, MERS purports to act purely as a 'nominee'---a form of an agent. On the other hand, MERS also claims to be an actual mortgagee, which is to say an owner of the real property right to foreclose upon the security interest. That a company cannot be both an agent and a principal with respect to the same right is axiomatic."); Nolan Robinson, Note, *The Case Against Allowing Mortgage Electronic Registration Systems, Inc. (MERS) to Initiate Foreclosure*, 32 Cardozo L. Rev. 1621, 1643-44 (2011) ("Despite MERS's success in the courtroom, however, . . . basic principles of agency support the claim that MERS should not, in fact, have legal standing to foreclose in this scenario. . . . [A]n agent cannot augment the power of its principal, nor can a principal grant rights to an agent that the principal does not itself possess.").

In contrast, other courts have held that MERS's status as beneficiary as nominee for the lender constitutes a protected property right.[21] In Mortgage Electronic Registration Systems, Inc. v. Bellistri, No. 4:09-CV-731, 2010 WL 2720802 (E.D. Mo. July 1, 2010), the county failed to give MERS notice of a tax sale; the relevant Missouri notice statute required notice to any person "who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate." Bellistri, 2010 WL 2720802, at *10 (quoting Jones-Munger Act § 140.405). The court held that MERS, "as beneficiary as nominee for the lender and the lender's assigns," held a "publicly recorded" claim in the property within the meaning of the Missouri statute, so it was entitled to notice. Id. at *12. The Bellistri court added, "MERS'[s] interest as a nominee is itself a sufficient property right to trigger a due process right to notice," because MERS had "bare legal title" in the property. "Such an interest," the court held, "is sufficient to bring an action at

---

[21] MERS asserts that a recent decision from our Court of Appeals can be counted among the courts holding that MERS has a protected property right arising out of a similar deed of trust, citing EverBank v. Henson, No. W2013-02489-COA-R3-CV, 2015 WL 129081 (Tenn. Ct. App. Jan. 9, 2015). We disagree. The issue before the court in Henson was whether MERS was a "part[y] interested" in a foreclosure proceeding so as to entitle MERS to notice under Tennessee Code Annotated section 35-5-104(d). In that situation, the Henson court held that MERS was a "part[y] interested" under the statute because it had "a lien that would be extinguished or adversely affected by the sale." Henson, 2015 WL 129081, at *4. Thus Henson interpreted the foreclosure statutes, not the tax sale statutes, and dealt with statutory interpretation, not whether MERS has a "protected property interest" under the Due Process Clause. Therefore, Henson did not speak to whether MERS has a protected property interest arising out of the deed of trust.

law and is therefore a species of property protected by due process." Id. at *13-14 (citing Sprint Commc'ns Co., L.P. v. APPC Servs., Inc., 554 U.S. 269, 287-88 (2008) ("Sprint").

The Bellistri court also reasoned that MERS had a protected property interest that arose out of its "legal right to file suit to foreclose the mortgage" under the relevant foreclosure statutes and its "right to enforce the lien on the property via a power of sale in the trustee." Id. at *14. "The right to file a lawsuit is 'a substantial property right.'" Id. (quoting Kinsella v. Landa, 600 S.W.2d 104, 107 (Mo. Ct. App. 1980) (statutory right to contest will is a substantial property right)); see also Citimortgage, 975 N.E.2d at 814-15, 817 (holding that the agency relationship conferred upon MERS protected property interests sufficient to give MERS's assignee the right to intervene in a foreclosure suit; also noted, however, that it was "a bridge too far" to argue that MERS itself was entitled to notice of the foreclosure action under the notice statute).

To support its conclusion that "bare legal title" is a protected property interest, the Bellistri court cited the United States Supreme Court's decision in Sprint.[22] See Bellistri, 2010 WL 2720802, at *13. In Sprint, several payphone operators assigned their legal claims against long-distance carriers to billing and collection firms called "aggregators," so that the aggregators could bring suit against the long-distance carriers on their behalf. Sprint, 554 U.S. at 271-72. The aggregators and the payphone operators entered into agreements whereby the aggregators agreed to remit the proceeds of the litigation to the payphone operators at the conclusion of the suit. Id. The operators viewed this arrangement as an alternative more favorable to them than filing a class action in their own names. Id. at 290-91. The issue presented to the Court was whether the aggregators had standing to bring suit when the aggregators themselves had suffered no injury; the injuries were sustained by the payphone operators.

The Court in Sprint held that aggregators had standing to bring suit to assert the operators' claims. It cited precedents that "make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts . . . have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection." Id. at 285. Even though the aggregators suffered no injuries, the Court held, "the payphone operators assigned their claims to the aggregators lock, stock, and barrel." Id. at 286. This was so even though the aggregators were contractually obliged to remit the proceeds to the payphone operators at the conclusion of the lawsuit. The Court asked rhetorically, "What does it matter what the aggregators do with the money afterward?" Id. at 287. Thus, based on the assignment of

---

[22] MERS also cites Sprint in its appellate brief for the proposition that "bare legal title to a claim, without any equitable or beneficial interest therein, is an independent property interest that confers standing on a party."

all the plaintiffs' interests and the long history of allowing lawsuits by assignees, the Court concluded that the aggregators had standing to bring the lawsuit.

As noted above, the issue we address in this appeal is not whether MERS has standing to file a lawsuit, but whether MERS had an interest in the subject property that was protected under the Due Process Clause of the federal Constitution. Sprint turned on the question of standing and did not discuss what constitutes an interest in real property that is entitled to due process protections. Thus, Sprint is inapplicable because the aggregators' property interest in Sprint was addressed in the context of their standing to bring suit.

Moreover, even if the analysis in Sprint were applicable here, we note a critical factual difference. In Sprint, the aggregators received their property interest through a total assignment of the litigation proceeds from the operators---lock, stock, and barrel. In contrast, there is nothing in the DOT or elsewhere in the record in this case to indicate that any property right was assigned by a lender to MERS; rather, MERS was designated as the "nominee" for the lender and its assigns. The statement in Sprint cited by MERS, that courts "have always permitted the party with legal title alone to bring suit," is followed by the qualifier that it applies "where assignment is at issue." Id. at 285. It is inapplicable to "bare legal title" where, as here, no property rights are transferred to the nominee. The DOT grants nothing more to MERS, and MERS has not argued or submitted any evidence that it has anything other than the power to act on the note owner's behalf. Therefore, in our view, Sprint does not support the argument that the DOT grants MERS a protected property interest.[23]

MERS argues that it has a protected property interest by virtue of its role as the beneficiary as nominee under the DOT. MERS relies heavily on cases in which courts have cited MERS's status as the nominal beneficiary in upholding MERS's authority to act as the agent of any valid note holder, including assigning a deed of trust or enforcing a note. Dauenhauer v. Bank of N.Y. Mellon, 562 Fed. Appx. 473, 479 (6th Cir. 2014); see Smith v. BAC Home Loans Servicing LLP, 552 Fed. Appx. 473, 479 (6th Cir. 2014).

---

[23] One federal district court has interpreted Sprint as support for holding that "bare legal title" is a protected property interest sufficient to confer standing on MERS, "even where the party asserting the loss holds no beneficial interest in the claim for payment." Mortgage Elec. Registration Sys. v. Robinson, 45 F. Supp. 3d 1207, 1214 (C.D. Cal. 2014) (citing Sprint, 554 U.S. at 285-89); see Mortgage Elec. Registration Sys. v. Robinson, No. CV 13-7142 PSG (ASx), 2015 WL 993319, at *4 (C.D. Cal. 2014) (same case, holding that both MERSCORP and MERS have standing). Respectfully, we disagree with this characterization of the holding in Sprint. The plaintiff aggregators in Sprint did not have "bare" legal title. Rather, they were assigned all of the beneficial interests held by the payphone operators when they brought suit on their behalf. They were not simply "nominees," appointed to bring the lawsuit in name only.

MERS argues that this nomenclature is important and that its role as nominee makes it an agent for the lender and its successors and assigns for the limited purpose of holding and enforcing the security agreement. The ability to foreclose on the subject property, MERS argues, is a real property interest entitled to due process protections. MERS observes that Tennessee courts have approved MERS's authority to foreclose on a note as nominee for the note owner and have held that it may also assign a mortgage as nominee for the lender. See Collins v. Mortgage Elec. Registration Sys., No. 3:11-CV-00264, 2012 WL 848041, at *2 (M.D. Tenn. March 12, 2012) (authority to foreclose as nominee); Thompson v. American Mortg. Express Corp., No. 3-13-0817, 2014 WL 1631001, at *2 (M.D. Tenn. Apr. 23, 2014) (authority to assign note as nominee).

Respectfully, we are not persuaded. For purposes of this appeal, we do not question MERS's authority to act as agent for the lender and any successor lenders. However, the lender's agreement to appoint MERS as its agent does not endow MERS with the lender's property interest or for that matter any independent property interest whatsoever. The note owner is the actual beneficiary, i.e., the party that benefits from the security instrument by its entitlement to payments on the promissory note, secured by the deed of trust. Sprint, 554 U.S. at 286. In this case, there was no assignment of property rights to MERS; it is simply an agent for the lender, in name only, holding no property rights of its own.

We agree with those courts that have held that, despite the fact that the DOT includes "beneficiary" among the various labels affixed to MERS, when the realities of the transaction are scrutinized, MERS is not a true "beneficiary" of the DOT. MERS receives nothing from the DOT itself. The DOT even qualifies the denomination "beneficiary" by adding that MERS is a beneficiary "solely as nominee" for the lender and the lender's assigns. The term "nominee" indicates an agency relationship.[24] As noted by our Court of Appeals, a nominee is "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." MERS, 2014 WL 24439, at *5 (quoting Black's Law Dictionary (9th ed.)). Thus, MERS is authorized to exercise the rights and obligations granted to the lender by the borrowers, but "only as an agent for the lender, not for its own interests." See Fontenot, 198 Cal. App. 4th at 273.

---

[24] The record contains no evidence regarding the scope of the agency relationship between MERS and the successor lender to Choice Capital. Interestingly, the identity of the successor lender does not appear in the record and there is no indication in the record that the successor lender made any attempt to become involved in this lawsuit.

A reading of the DOT in its entirety supports this conclusion.  The DOT describes at length the obligations between the Dossetts, as borrowers, and Choice Capital, as lender.  For example, the DOT prescribes the manner by which the Dossets must make payments; it requires the Dossetts to pay any taxes, assessments, charges, or fines related to the property; it requires the Dossetts to obtain property insurance; and it gives protections for the "Lender's Interest in the Property and Rights under this Security Instrument" should the Dossetts fail to perform the covenants and agreements in the DOT.  MERS is not mentioned in any provision requiring notice to the lender in the DOT.  The provision in the DOT that addresses all manner of notice provides:

> **15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . .  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy this corresponding requirement under this Security Instrument.

Thus, even the DOT itself does not require notice to MERS in connection with the obligations between the borrowers and lender under the DOT.  This is significant since the purpose of the DOT is to secure the borrowers' obligations to the lender under the note.

MERS insists that it is entitled to notice of the tax sale by virtue of its business model, in which it interposes itself to give notice of dispositions of the property to its members. Absent a holding that it is entitled to notice in this and other similar situations, MERS asserts, when the note is securitized and the original lender has no further interest in the deed of trust, there will be no way to assure that assignee lenders will receive notice.

Respectfully, it appears that MERS's business model requires it to be all things to all people.  As noted in Landmark and by the trial court below, in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance, 704 N.W.2d 784 (Neb. 2005), MERS argued that it had no interest in mortgaged property under a deed of trust in order to establish that it is not a "mortgage banker" subject to the

licensing requirements of the Mortgage Bankers Registration and Licensing Act. <u>Neb. Dep't of Banking and Fin.</u>, 704 N.W.2d at 788, *cited in* <u>Landmark</u>, 216 P.3d at 168. The Nebraska Court recounted MERS's position: "[C]ounsel for MERS explained that MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members." <u>Neb. Dep't of Banking and Fin.</u>, 704 N.W.2d at 787. Similarly, the <u>Thompson</u> court noted that "MERS disclaims any ownership interest in the notes that pass through its databanks." <u>Thompson</u>, 773 F.3d at 748. Our job is not to assist MERS in meeting its contractual obligations to its member lenders, but rather to determine whether MERS has a property interest that demands due process protection.

We agree with the conclusion reached by both the Court of Appeals and the trial court, that "MERS was never given an independent interest in the property." <u>MERS</u>, 2014 WL 24439, at *5. MERS is a mortgage registration system that does not itself hold any interest in the subject property, by virtue of the DOT or otherwise. Rather, MERS is "an agent with limited powers, akin to a special power of attorney." <u>Weingartner</u>, 702 F. Supp. 2d at 1279. It has no interest in the subject property that is protected under the Due Process Clause, so notice to MERS was not compelled by the Constitution. Accordingly, we affirm the trial court's grant of judgment on the pleadings to Mr. Ditto.

## CONCLUSION

In sum, we hold that, when a plaintiff who claims to have a protected interest in real property files suit to have a tax sale of the property declared void for lack of notice, the pre-suit tender requirement in Tennessee Code Annotated section 67-5-2504(c) does not apply, so we affirm the Court of Appeals' holding that the trial court did not err in failing to grant Mr. Ditto's motion to dismiss on this basis. We further conclude that MERS acquired no protected interest in the subject property by virtue of language in the DOT designating MERS as beneficiary solely as nominee for the lender and its assigns, or by language in the DOT indicating that MERS has "legal title" of the subject property for the purpose of enforcing the lender's rights. Because MERS had no protected interest in the subject property, its due process rights were not violated by the County's failure to notify it of the tax foreclosure proceedings or the tax sale. Accordingly, the trial court's grant of judgment on the pleadings in favor of Mr. Ditto is affirmed, and the Court of Appeals' decision is affirmed, albeit on a different basis.

The judgment of the Court of Appeals is affirmed, and the decision of the trial court is affirmed. Costs on appeal are taxed to Petitioner/Appellant Mortgage Electronic Registration Systems, Inc., and its surety, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE