IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## MARK ROSS ET AL. v. ORION FINANCIAL GROUP, INC. ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 39132     Joseph Woodruff, Judge**

———————————————————

### No. M2018-00991-COA-R3-CV

———————————————————

This appeal involves the assignment of a deed of trust and subsequent foreclosure. Appellants purchased a home and later defaulted on the mortgage. Appellees foreclosed on the property, and Appellants filed suit to set aside the foreclosure. Appellees argued numerous theories, which were all dismissed by the trial court on grant of summary judgment. Appellants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

P. Robert Philp, Jr., Nashville, Tennessee, for the appellants, Mark Ross, and Estate of Deborah Ross.

Richard C. Keller and J. Matthew Kroplin, Nashville, Tennessee, for the appellees, Orion Financial Group, Inc., CitiMortgage, Inc., CitiFinancial Mortgage Company, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., Merscorp Holdings, Inc., First American Title Company, TransContinental Title Company, Athens Title Company, and J Phillip Jones.

Robert J. Notestine, III, Nashville, Tennessee, for the appellees, Bill Lazarus and Dan Heichelbech.

## OPINION

## I. Background

On December 22, 2003, Mark Ross and Deborah Ross purchased property located at 1747 Cayce Spring Road in Thompson Station, Tennessee (the "Property"). Concurrent with their purchase, the Rosses executed a promissory note (the "Original Note") in favor of The Lending Group, Inc. in the principal amount of $403,798.00. The Original Note was secured by a deed of trust recorded on January 12, 2004. In April 2004, The Lending Group assigned the Original Note to CitiFinancial Mortgage Company, Inc. Orion Financial Group, Inc. ("Orion") executed the assignment as attorney-in-fact for The Lending Group. CitiMortgage, Inc. ("CMI) is CitiFinancial Mortgage Company, Inc.'s successor in interest by merger.

Approximately one year later, in May 2005, the Rosses obtained a home equity line of credit ("HELOC") from Citizens Bank in the amount of $125,000.00. The Rosses executed a promissory note (the "Citizens Note") and a deed of trust (the "Citizens Deed") to secure the HELOC. The Citizens Deed was recorded in Williamson County on June 9, 2006. Thereafter, Citizens Bank assigned the Citizens Deed to Mortgage Electronic Registration Systems, Inc. ("MERS"). HSBC Mortgage Services of Elmhurst, Illinois ("HSBC") prepared the assignment.

On October 25, 2006, the Rosses refinanced their Original Note and the HELOC with CMI. The new promissory note (the "CMI Note"), in the amount of $575,000.00, was dated October 25, 2006. The accompanying deed of trust (the "CMI Deed") was recorded on November 2, 2006. The Trustee under the CMI Deed was First American Title Company. The CMI Deed describes MERS as follows: "'MERS' is a Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." The Transfer of Rights in the Property section of the CMI Deed provides, "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." Each of the prior deeds of trust was subsequently released.

On November 9, 2006, MERS executed a Trust Deed Release, which was recorded on November 27, 2006. On December 4, 2006, CMI executed a Trust Deed Release of The Lending Group, Inc. indebtedness, i.e., the Original Note. The Trust Deed Release was recorded on December 11, 2006. This Trust Deed Release was prepared by Verdugo Trustee Service Corporation, a Gaithersburg, Maryland mortgage service corporation ("Verdugo").

The Rosses concede that they defaulted on the CMI Note in early 2010. Despite notice and time to cure, the Rosses did not do so, and CMI initiated foreclosure on the Property. On September 29, 2010, CMI executed a Substitution of Trustee, under which J. Phillip Jones, Esq. was substituted as Trustee under the CMI Deed. The Substitution of Trustee was recorded on November 8, 2010. MERS executed a Corporate Assignment of Deed of Trust, whereby the CMI Deed was transferred to CMI. The Corporate

Assignment of Deed of Trust was accomplished on September 30, 2010 and recorded on November 10, 2010. The Substitute Trustee on the CMI Deed advertised the foreclosure sale on October 15, 22, and 29, 1010. The Property was sold at foreclosure on November 8, 2010 to Bill Lazarus and Dan Heichelbech.

On November 8, 2010, the Rosses filed a Verified Petition for Injunction seeking to prevent foreclosure on the Property. As noted above, the Property was sold on the same day that the Rosses filed for injunction. On November 11, 2010, the trial court entered an order denying the Rosses' petition on the ground that the petition failed to comply with Tennessee Code Annotated section 29-23-201, which requires an injunction request on a foreclosure to be served on the mortgage holder at least five days before the sale.

The Rosses were granted leave to file an amended complaint on March 4, 2013. The amended complaint added several defendants. On May 1, 2015, the Rosses filed a Second Amended Complaint against Orion, CMI, Verdugo, MERS, First American Title Company, Transcontinental Title Company, Athens Title, Bill Lazarus, Dan Heichelbech, and J. Phillip Jones (together, "Appellees"). The Rosses asserted the following claims: (1) quiet title; (2) declaratory relief; (3) fraudulent conveyance; (4) slander of title; (5) breach of fiduciary duties (as to all Trustees and title companies); (6) conversion; (7) fraud and misrepresentation; (8) breach of contract; (9) promissory estoppel; (10) negligence; (11) unfair and deceptive trade practices in violation of the Tennessee Consumer Protection Act ("TCPA"); (12) unjust enrichment; and (15) injunctive relief. Several Appellees filed motions to dismiss the second amended complaint. The trial court denied the motions.

On February 19, 2017, Deborah Ross died. On July 6, 2017, the trial court entered an order substituting Mr. Ross as Personal Representative of the Estate of Deborah Ross. On October 23, 2017, Mr. Ross filed a motion for summary judgment. On December 7, 2017, Appellees filed a cross-motion for summary judgment. Prior to the hearing on the motions for summary judgment, the trial court granted Appellees' motion to withdraw admissions by order of February 6, 2018, discussed *infra*. By order of April 27, 2018, the trial court denied Mr. Ross's motion for summary judgment and granted Appellees' motion for summary judgment. Specifically, the trial court "dismissed" the complaint and directed entry of final judgment pursuant to Tennessee Rule of Civil Procedure 54.02(1). Appellants appeal.

## II. Issues

There are three dispositive issues, which we state as follows:

1. Whether the trial court erred in granting summary judgment in favor of Appellees as to all of Mr. Ross's causes of action.

- 3 -

2.   If so, whether the trial court erred in denying Mr. Ross's motion for summary judgment.

3.   Whether the trial court abused its discretion in granting Appellees' motion to withdraw admissions.

### III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.  We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness.  ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015).  In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.  ***Rye***, 477 S.W.3d at 250 (citation omitted).  The reviewing court must consider the evidence in the light most favorable to the non-moving party and must resolve all reasonable inferences in the non-moving party's favor.  ***Akridge v. Fathom, Inc***., No. E2014-00711-COA-R9-CV, 2015 WL 97946, at *4 (Tenn. Ct. App. Jan. 7, 2015) (citing ***B & B Enter. of Wilson Cnty., LLC v. City of Lebanon***, 318 S.W.3d 839, 844-45 (Tenn. 2010)) (internal citations omitted).

Tennessee law provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.  However, "a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis." ***Rye***, 477 S.W.3d at 264. Rule 56.03 requires the moving party to support its motion with "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03.  Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record. *Id.*  If the moving party fails to meet its initial burden of production, the nonmoving party's burden is not

- 4 -

triggered, and the court should dismiss the motion for summary judgment. ***Town of Crossville Hous. Auth***., 465 S.W.3d 574, 578-79 (Tenn. Ct. App. 2014) (citing ***Martin v. Norfolk S. Ry. Co***., 271 S.W.3d 76, 83 (Tenn. 2008)). However, if the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Hannan v. Alltel Publ'g. Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co***., 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). As the Tennessee Supreme Court has explained:

> [T]o survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.***, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye***, 477 S.W.3d at 265. If adequate time for discovery has been provided and the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial, then the motion for summary judgment should be granted. ***Id.*** "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." ***Giggers v. Memphis Hous. Auth.***, 277 S.W.3d 359, 364 (Tenn. 2009) (citing ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. *Mortgage Electronic Registration Systems, Inc. v. Ditto*

Throughout these proceedings, Mr. Ross has maintained that the Tennessee Supreme Court's decision in ***Mortgage Electronic Registration Systems, Inc. v. Ditto***, 488 S.W. 3d 265 (Tenn. 2015) ("***Ditto***") stands for the proposition that MERS had no interest in the Property to convey; thus, he asserts that the assignment from MERS to CMI was invalid such that CMI did not have the authority to foreclose. As set out in Mr. Ross's motion for summary judgment, he cites the following language from Ditto: "MERS is a mortgage registration system that does not itself hold any interest in the

subject property, by virtue of the DOT or otherwise. Rather, MERS is 'an agent with limited powers, akin to a special power of attorney.'" *Id*. at 292 (citing ***Weingartner v. Chase Home Finance,*** LLC, 702 F. Supp. 2d 1276, 1279-1280 (D. Nev. March 15, 2010)). Based on this language, Mr. Ross's motion for summary judgment argues that MERS "cannot hold any property interest and that MERS cannot be a beneficiary of a Deed of Trust . . . as a matter of law." As such, he contends that "MERS was never given an independent interest in the [Property] and therefore as a matter of law could not assign or otherwise transfer any interest that it could not legally possess." Therefore, "[b]ecause MERS as a matter of Tennessee law could not be a beneficiary under any deed of trust on the [Property], and because MERS is indicated as a beneficiary on [the Rosses'] mortgage documents, which resulted in wrongful foreclosure . . . [Mr. Ross is] entitled to judgment as a matter of law." Because the causes of action set out in Mr. Ross's second amended complaint largely rest on his interpretation of the ***Ditto*** holding, we will address that holding before proceeding to the substantive question of whether the trial court erred in granting Appellees' motion for summary judgment.

In ***Ditto***, "Joseph L. Dossett and Gerald Dossett (collectively, "the Dossetts") purchased property located at 5518 Oakdale Avenue in Chattanooga, Hamilton County, Tennessee ("the property" or "the subject property"), as joint tenants with the right of survivorship." ***Ditto***, 488 S.W.3d at 267. The property was purchased in March 2005, and the warranty deed for the property was recorded in the Register's Office for Hamilton County, Tennessee. ***Id***.

In July 2006, the Dossetts and their wives borrowed approximately $60,000 from Choice Capital Funding, Inc. ("Choice Capital"), which amount was secured by the subject property. As is typical in such transactions, the parties executed two documents: (1) a promissory note (a negotiable instrument) evidencing the borrowers' promise to repay the loan, and (2) a deed of trust ("DOT") securing the repayment of the loan by transferring title to the property to the trustee and the lender. ***Id***. at 267-68. In the DOT, the term "Borrower" referred to the Dossetts and their wives. ***Id.*** at 268. The term "Lender" referred to Choice Capital. ***Id.*** The "Trustee" in the DOT was listed as Robbie McLean, Esq., an attorney. ***Id***. Most importantly, the DOT described the Mortgage Electronic Registration System as "a separate corporation that is acting solely as nominee for [Choice Capital] and [Choice Capital's] successors and assigns." ***Id***. The DOT stated that MERS is "the beneficiary under this Security Instrument," and it included the full address and telephone number for MERS. ***Id***. The DOT was recorded with the Register of Deeds in Hamilton County. ***Id***.

Subsequently, the Dossetts defaulted on their 2006 property taxes. As a result, the property was sold at a tax sale for $10,000. ***Id.*** at 271. Over a year after the tax sale, MERS filed a petition against the tax sale purchaser seeking declaratory judgment to set aside the tax sale. ***Id.*** MERS argued that it possessed a constitutionally-protected property right in the subject property. As such, MERS asserted that the lack of notice of

the tax sale to MERS was a violation of its due process rights. *Id*. The trial court granted the tax sale purchaser's Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings and held, *inter alia*, that MERS did not have a protected interest in the property. *Id.* at 273.

This Court affirmed the trial court's decision, albeit on a different basis. ***Mortgage Elec. Registration Sys., Inc. v. Ditto***, No. E2012-02292-COA-R3-CV, 2014 WL 24439, at *5-6 (Tenn. Ct. App. Jan. 2, 2014) ("***MERS***"). We concluded that MERS did not have standing to file an action to set aside the tax sale because "MERS was never given an independent interest in the property." ***MERS,*** at *5. Rather, the property owners mailed payments to the current lender, "while MERS solely recouped payment for its services from the current lender and was specifically relegated to the role of nominee" for the current lender and its successors and assigns. *Id.* Relying on the definition of "nominee" found in Black's Law Dictionary, i.e., "A person designated to act in place of another, usu. in a very limited way" or "A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id.* (citing Black's Law Dictionary (9th ed.)), we concluded that MERS "did not suffer an injury by the sale of the property at issue." *Id*. Rather, we held that "the only injury suffered by MERS related to the future effect this case could have on its business model, which is reliant upon the avoidance of county recording fees by placing the onus on the county to provide notice to MERS instead of the current lender." *Id.* We concluded that such injury was insufficient to confer standing on MERS: "We fail to see how this is a distinct and palpable injury capable of being redressed by this court. Accordingly, we uphold the trial court's grant of Purchaser's motion for judgment on the pleadings because MERS did not have standing to file suit." *Id.*

On appeal to the Tennessee Supreme Court, it framed the issue as whether MERS has a property interest that is protected under the Due Process Clause. ***Ditto***, 488 S.W.3d at 275. After a thorough recitation of MERS' role in the mortgage industry, the Tennessee Supreme Court held:

> We agree with the conclusion reached by both the Court of Appeals and the trial court, that "MERS was never given an independent interest in the property." ***MERS***, 2014 WL 24439, at *5. MERS is a mortgage registration system that does not itself hold any interest in the subject property, by virtue of the DOT or otherwise. Rather, MERS is "an agent with limited powers, akin to a special power of attorney." ***Weingartner***[ ***v. Chase Home Financial, LLC, et al.***], 702 F. Supp. 2d [1276,] at 1279 [(D. Nev. March 15, 2010)]. It has no interest in the subject property that is protected under the Due Process Clause, so notice to MERS was not compelled by the Constitution. Accordingly, we affirm the trial court's grant of judgment on the pleadings to Mr. Ditto.

*Ditto*, 488 S.W.3d at 292.

Again, based on the ***Ditto*** holding, Mr. Ross argues that the property transfer from MERS to CMI was invalid because MERS did not have a property interest to convey. Thus, he argues that the chain of title to the Property was broken such that the foreclosure should be set aside. In ruling on Mr. Ross's argument, the trial court found, in relevant part, that:

> Mr. Ross misconstrues the ***Ditto*** case and attempts to expand its scope too far. In ***Ditto***, the Tennessee Supreme Court merely answered the question of whether MERS had a property interest that was protected under the Due Process Clause, compelling notice by the Constitution, to which the Supreme Court determined it did not . . . . However, despite this holding in ***Ditto***, MERS is still permitted to act as an agent for a lender and its successors and to assign a deed of trust and facilitate the foreclosure proceedings for a lender, which was performed here.

We agree with the trial court's conclusion. The Tennessee Supreme Court merely held that "MERS acquired no ***protected*** interest in the subject property through either the deed of trust's designation of MERS as the beneficiary solely as nominee for the lender and its assigns or its reference to MERS having legal title to the subject property for the purpose of enforcing the lender's rights." ***Ditto***, 488 S.W.3d at 267 (emphasis added). Contrary to Mr. Ross's argument, the ***Ditto*** Court did not hold that MERS cannot act as an agent for a lender and its successors and assigns by being named as such in the deed of trust. In fact, the Tennessee Supreme Court noted several decisions where

> courts have upheld MERS's involvement in mortgage transactions as beneficiary 'solely as nominee' of the lender. Some of these [cases] hold that MERS's designation as beneficiary 'solely as nominee' for lender creates an agency relationship between MERS and the lender. This agency relationship, they conclude, gives MERS the authority to act on behalf of a valid note holder, so MERS can validly assign a deed of trust or enforce a note on behalf of the lender.

***Ditto***, 488 S.W. 3d at 283. Likewise, in ***Dauenhauer v. The Bank of New York Melon, et al.***, No. 3:12-CV-01026, 2013 WL 2359602 at * 4 (M.D. Tenn. May 28, 2013), the District Court noted that

> [c]ourts have consistently upheld the validity of MERS's role as nominee for a promissory note's lenders and assigns, and as beneficiary under a deed of trust. *See* ***Samples v. Bank of Am., N.A.***, No. 3:12-CV-44, 2012 WL 1309135, at *3-4 (E.D. Tenn. April 16, 2012) (finding claims based on invalid assignment by or the role of MERS in mortgage transactions—

- 8 -

where the deed of trust named MERS as the beneficiary and nominee for the lender and its assigns—failed as a matter of law); *In re Mortg. Elec. Regis. Sys. Litig., MDL*, No. 09-2119-JAT, 2011 WL 4550189, at \*3-4 (D. Ariz. Oct.3, 2011) (finding a deed of trust can grant MERS authority as the beneficiary of the deed and nominee for the note holder); *Golliday v. Chase Home Fin., LLC*, No. 1:10–cv–532, 2011 WL 4352554, at \*7 (W.D. Mich. Aug.23, 2011) ("Over the twenty years that MERS has existed, borrowers who have defaulted on their loan obligations have attempted, without success, to attack the validity of the mortgage based on the involvement of MERS.").

In line with the foregoing cases, in *Ditto*, the Tennessee Supreme Court expressly stated that it did "not question MERS's authority to act as agent for the lender and any successor lenders" and acknowledged that "MERS is authorized to exercise the rights and obligations granted to the lender by the borrowers." *Id.* at 291. This is exactly the role that MERS played in the instant case. Based on the holding in *Ditto*, which we cannot expand to comport with Mr. Ross's reading, we conclude that MERS was within its right as agent of the lender and its successors to assign the Rosses' deed of trust. Our conclusion negates Mr. Ross's arguments centered on the allegation that the transfer from MERS to CMI resulted in a broken chain of title. Furthermore, the undisputed fact that the Rosses defaulted on the CMI Note negates their arguments centered on allegations that they have superior title in this case. Nonetheless, we will briefly address each of the causes of action to determine whether any can survive Appellees' motion for summary judgment.

## V. Summary Judgment

### A. Quiet Title

Mr. Ross argues that he is entitled to summary judgment on the claim for quiet title because he has superior title to the Property. To succeed on the claim for quiet title, Mr. Ross must show that he has legal title to the Property and that he should not be subjected to various future claims against that title. *Dauenhauer*, 2013 WL 2359602, at \* 6. The *Dauenhauer* Court further held that "Plaintiffs have failed to plead that they have fulfilled their obligation under the Note, a step which is necessary for them to obtain superior legal title to the . . . property." *Id*. at \*7. The same is true here. By signing the CMI Note, the Rosses agreed to repay the money they were loaned. They admittedly defaulted on the note. By signing the CMI Deed, the Rosses conveyed the Property to the Trustee and its successors and assigns. In so doing, the Rosses agreed that the Trustee and its successors and assigns held legal title and all interests granted by the Deed of Trust until the debt was fully paid under the CMI Note. Because the Rosses cannot alleged that they have paid the CMI debt in full, they have not shown any right to obtain title to the property from the Trustee. *Id*. at \* 5. In the absence of a plausible claim of superior title to this Property, the trial court properly granted summary judgment in favor

of Appellees on the quiet title claim.

## B. Declaratory Relief

In the second amended complaint, Mr. Ross seeks declaratory relief arguing that Appellees have no legal or equitable right under several of the foregoing assignments. The trial court held that Mr. Ross "cannot challenge the validity of the assignments, as [the Rosses] are not a party to the assignments."

The question of standing is an issue of law, which we review de novo. *In re Estate of Smallman*, 398 S.W.3d 134, 148 (Tenn. 2013) (citing *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005)). "Standing is a judge-made doctrine based on the idea that '[a] court may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed.'" *Cox*, 196 S.W.3d at 758 (citing 59 Am.Jur.2d Parties § 30 (1987)). The primary focus of the standing inquiry is on the party, not on the merits of the claims asserted. *Id*. Here, we agree with the trial court's conclusion that the Rosses have no standing to challenge the assignments.

Third parties to an assignment generally lack standing to challenge the validity of the assignment. *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). Specifically, a borrower generally cannot assert any ground that would render an assignment merely voidable "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." 6A C.J.S. *Assignments* § 133, Westlaw (database updated February 2019); 6 Am. Jur. 2d *Assignments* § 119, Westlaw (database updated February 2019) ("The obligor of an assigned claim . . . may not defend on any ground that renders the assignments voidable only . . . ."). Rather, a borrower may challenge an assignment only on limited grounds, such as when an instrument is nonassignable, the assignee lacks title, or there is a prior revocation of assignment. *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 533 (6th Cir. 2016). However, none of these exceptions apply here. The CMI Deed and CMI Note were assignable, and the Rosses do not claim that there was a prior revocation of assignment. As such, the Rosses' challenge would only render the disputed assignments voidable. Therefore, we conclude that the trial court did not err in granting summary judgment in favor of Appellees on the declaratory relief claim.

## C. Fraudulent Conveyance

In arguing that Appellees' fraudulently conveyed the Property, thus negating the foreclosure sale, Mr. Ross again argues, under *Ditto*, that the conveyance from MERS to CMI was improper. Relying on *Berry, supra*, the trial court held that the Rosses had no standing to challenge the assignments. We agree. Furthermore, to the extent that Mr. Ross's argument rests on his assertion that MERS could not transfer proper title, it fails

for the reasons discussed in detail above regarding the holding in **Ditto**. Mr. Ross has asserted no additional grounds to support a finding that the assignments in this case were fraudulent. Accordingly, we conclude that the trial court did not err in granting Appellees' motion for summary judgment as to this claim.

### D. Slander of Title

As framed in the trial court's final order, Mr. Ross argues that he is entitled to summary judgment on the slander of title claim "because of the false and fraudulent mortgage documentation and wrongful foreclosure" of the Property. Mr. Ross specifically asserts that Appellees: (1) lacked standing to engage in debt collection; (2) lacked standing to foreclose on the Property; (3) lacked the ability to enforce the CMI Deed; and (4) have "convoluted and broken the chain of title."

As explained by the **Dauenhauer** Court,

[i]n order to state a claim for slander of title in Tennessee, a plaintiff must demonstrate four elements: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." **Brooks v. Lambert**, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). Malice is a necessary component of a slander of title claim. **Waterhouse v. McPheeters**, 176 Tenn. 666, 145 S.W.2d 766, 767 (1940).

**Dauenhauer**, 2014 WL 1424494, at *8. In granting Appellees' motion for summary judgment on this cause of action, the trial court held that Appellees

did not commit the offense of slander of title for the [Property]. First, the Rosses consented to the use of the MERS as a beneficiary and nominee, and specifically agreed that MERS had the authority to enforce the CMI Deed of Trust. Thus, MERS's assignment of the property interest to CMI, in accordance with the CMI Deed of Trust, was proper. Second, the Rosses again lack standing to assert this claim. Third, the statute of limitations has run on this claim.

(Footnote omitted). We agree with the trial court's holdings. As discussed above, courts have consistently upheld the validity of MERS's role as nominee for a promissory note's lenders and assigns, and as beneficiary under a deed of trust. *See **Samples v. Bank of Am., N.A.**, No. 3:12-CV-44, 2012 WL 1309135, at *3-4 (E.D. Tenn. April 16, 2012). In **Samples**, the District Court for the Eastern District of Tennessee specifically stated that

per plaintiffs' deed of trust, MERS has legal title and may act as nominee for the lender and its successor and assigns. . . . Several courts have noted that such language explicitly grants MERS the power to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note. *See e.g.* **Golliday** [**v. Chase Home Finance, LLC**, No. 1:10–cv–532,] 2011 WL 4352554, at *7 [(W.D. Mich. Aug. 23, 2011)]; **Ciardi** [ **v. The Lending Co., Inc., et al.**, No. CV 10-0275-PHX-JAT,] 2010 WL 2079735, at *3 [(D. Ariz. May 24, 2010)]. Plaintiffs have also offered no legal or factual allegation or basis for disregarding the deed of trust signed by plaintiffs. Accordingly, any claims plaintiffs have attempted to assert based on an invalid assignment or the role of MERS in mortgage transactions will be DISMISSED.

**Samples**, 2012 WL 1309135, at *4. The same is true here. The "Transfer of Rights in the Property" section of the CMI Deed, which the Rosses executed, states that, "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." By signing this instrument, the Rosses consented to the use of MERS as a beneficiary and nominee. Concerning Mr. Ross's contention that MERS does not have the authority to enforce the CMI Deed, the CMI Deed further provides that, "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property"). By signing the CMI Deed, the Rosses consented to MERS enforcement of the CMI Deed. Based on the cases, discussed *supra*, confirming MERS's role as both beneficiary and nominee and its authority to exercise all of the interests held by the lender or its successors or assigns, including the right to foreclosure, we cannot conclude that the trial court erred in holding that MERS's action in this case was a valid.

The trial court also held that Mr. Ross lacked standing to challenge the assignment. Here, Mr. Ross's challenge relates to MERS's authority to execute the assignment. He does not assert that any of the rights assigned were nonassignable or that the provisions in the CMI Deed that allowed assignment were otherwise revoked. As noted above, "[t]he obligor of an assigned claim . . . may not defend on any ground that renders the assignments voidable only . . . ." 6 Am. Jur. 2d *Assignments* § 119, Westlaw (database updated February 2019).

Finally, we agree with the trial court's conclusion that Mr. Ross's slander of title claim, if any, is barred by the applicable statute of limitations. Slander of title is a common law tort of injurious falsehood, which relates to interests of parties in property. **Wagner v. Fleming**, 139 S.W.3d 295, 301 (Tenn. Ct. App. 2004). Under Tennessee Code Annotated section 28-3-105, injuries to real property are governed by a three year statute of limitations. At Paragraph 34 of the second amended complaint, Mr. Ross avers that

[o]n October 25, 2006, [Appellants] refinanced and executed a replacement Mortgage on the Property with Defendant Citi, in the amount of $575,000.00 . . . . This document was recorded on November 2, 2006 . . . in the Register's Office of Williamson County, Tennessee. . . . This document states that "[t]he beneficiary of this Security Instrument is MERS . . . ."

According to the second amended complaint, any cause of action for slander of title accrued, at latest, on November 2, 2006. The Rosses filed their original complaint on November 8, 2010, which was more than four years after the last possible accrual date. Accordingly, the trial court properly held that any slander of title claim was barred by the three year statute of limitations. For these reasons, we conclude that Appellees' motion for summary judgment was properly granted as to the slander of title claim.

### E. Injunctive Relief

Mr. Ross further asserts that he is entitled to summary judgment on the claim for injunctive relief. Specifically, he argues that the foreclosure sale should be set aside on his showing of "irregularity, misconduct, fraud, unfairness on the part of the trustee or the mortgagee that cause or contributed to an inadequate price." *Holt v. Citizens Central Bank*, 688 S.W. 2d 414, 416 (Tenn. 1984). Tennessee Code Annotated section 29-23-202 specifically requires that: "The party applying for relief in such case [i.e., injunctive relief from the sale of property under a deed of trust or mortgage] shall distinctly state how, when, and to whom the debt or any part of the debt secured aforementioned has been paid, or any circumstances of fraud which vitiate the contract." *Id*.; *see also* Tenn. R. Civ. P. 65.01, *et seq.*

In granting Appellees' motion for summary judgment on this claim, the trial court held that

there is no evidence of immediate irreparable harm as the foreclosure occurred approximately seven (7) years ago. Nor has Mr. Ross tendered an injunction bond, as required in Rule 65.05. There are no equities of the case which would support an injunction to Mr. Ross, because as Mr. Ross concedes, the Rosses were in default when the foreclosure occurred and they did not cure the default. . . . Lastly, Mr. Ross has failed to present any evidence that the foreclosure sale should be set aside for any irregularity, misconduct, fraud, or unfairness based upon the involvement of Defendant MERS.

We agree with the trial court that Mr. Ross is not entitled to injunctive relief to set aside the foreclosure sale. In view of the uncontested fact that the Rosses defaulted on

the CMI Note and our previous discussion concerning the validity of MERS involvement in the foreclosure, Mr. Ross has failed to meet his burden to show that he is entitled to injunctive relief. As such, we conclude that the trial court correctly granted summary judgment to Appellees on this claim.

## F. Fraud and Misrepresentation

In order to state a claim for fraud or intentional misrepresentation, Mr. Ross has the burden to show the following:

> (i) the defendant made a representation of an existing or past fact; (ii) the representation was false when made; (iii) the representation was in regard to a material fact; (iv) the false representation was made either knowingly or without belief in its trust or recklessly; (v) the plaintiff reasonably relied on the misrepresented material fact; and (vi) plaintiff suffered damage as a result of the misrepresentation.

***Diggs v. Lasalle Nat. Bank. Ass'n***, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012).

As set out in the second amended complaint, Mr. Ross argues that CMI did not establish effective control over its foreclosure process such that Appellees

> have apparently engaged in automated "robo-signing," filed affidavits without requisite personal knowledge of the affiant, filed false certifications, failed to review documents or other evidence on which the certification is based and which it may generally reference, falsely identified a signatory, may have forged signatures, have executed notarized documents outside the presence of the notary, have proceeded with wrongful foreclosure against [Appellants] without proper authority and legal standing, have purported to assign the subject Mortgage without proper authority and legal standing, and have made other similar misrepresentations to [Appellants], upon which they have reasonably and justifiably relied to their detriment and damage.

In granting Appellees' motion for summary judgment on this count, the trial court held that

> Mr. Ross has failed to present any evidence of misrepresentation made by [Appellees]. Deborah Ross testified that she had never spoken with a representative of CMI and had no evidence regarding any fraudulent activities regarding the loan which was refinanced with CMI. Furthermore, Mr. Ross testified the alleged misrepresentation made by CMI pertained to whether he could obtain a loan modification or other loss mitigation,

however, Mr. Ross could not remember what the representative of CMI allegedly misrepresented. Plus, although Mr. Ross alleges CMI engaged in "Robo-signing" of documents . . . he has no personal knowledge of this and thus is not entitled to summary judgment on his fraud claim.

From our review of the record, the trial court's findings are undisputed. In the absence of either personal knowledge or specific evidence to support Mr. Ross's allegations of fraudulent misrepresentations and/or practices, the trial court correctly granted Appellees' motion for summary judgment on this count.

Furthermore, even if Mr. Ross had produced sufficient evidence to support this claim, it would be barred by the applicable three year statute of limitations. Tenn. Code Ann. § 28-3-105(1). Mr. Ross's claims of fraudulent misrepresentation stem from the refinancing of the first and second mortgages with CMI. The claims, therefore, arose in or about October 2006. As noted earlier, the Rosses' original complaint was not filed until November 8, 2010, which was more than four years after a fraudulent misrepresentation claim, if any, would have accrued. For these reasons, the trial court correctly granted Appellees' motion for summary judgment as to this count.

### G. Breach of Contract

To prevail on a breach of contract claim, a plaintiff has the burden to prove: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. *BancorpSouth, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006). As correctly noted by Appellees, the "nonperformance" is not adequately asserted if there is no description of what the allegedly breached contract required in the first place. *Morris Props., Inc. v. Johnson*, No. M2007-00797-COA-R3-CV, 2008 WL 1891434, at *1 (Tenn. Ct. App. Dec. 10, 2007).

Turning to the record, in her deposition testimony, Mrs. Ross conceded that she had no knowledge or evidence that Appellees breached the CMI Note. Likewise, there is no evidence in the record that Mr. Ross had knowledge of any breach. Rather, as found by the trial court, "Mr. Ross appears to completely ignore the fact that the Rosses failed to cure the default on the Residence. Thus, it was the Rosses [who] first breach[ed] the contract." We agree. In the absence of any allegation specifying how Appellees breached the contract and in view of the undisputed fact that the Rosses defaulted on the CMI Note, we cannot conclude that the trial court erred in granting Appellees' motion for summary judgment as to this count.

### H. Violation of the Tennessee Consumer Protection Act ("TCPA")

Mr. Ross claims that Appellees violated the TCPA due to "acts and omissions"

that occurred before the alleged default and foreclosure proceedings. Specifically, he asserts that the "acts and omissions" of the Appellees constitute negligent misrepresentations, which constitute violations of the TCPA. In granting Appellees' motion for summary judgment on this claim, the trial court found that "[t]he only evidence submitted was that Mr. Ross believed there were misrepresentations regarding a loan modification, but he could not remember what the [Appellees] said." Accordingly, the trial court held that Mr. Ross "failed to submit any evidence as to a negligent misrepresentation performed by [Appellees] and has merely directed the Court to his averments in the Complaint." While the record supports the trial court's findings, Mr. Ross's TCPA claim ultimately fails because the TCPA does not address foreclosure proceedings.

In ***Schmidt v. Nat'l City Corp***., the District Court for the Eastern District of Tennessee recognized that "[t]he actions of a bank in repossessing and disposing of its collateral do not constitute violations of the [TCPA], even if the bank acted wrongfully in repossessing the collateral." ***Schmidt v. Nat'l City Corp***, No. 3:06–CV–209, 2008 WL 5248706, at *8 (E. D. Tenn. Dec.17, 2008). The plaintiffs in ***Schmidt*** argued that they suffered damages because the bank foreclosed on their home. *Id*. at *1. The plaintiffs filed a TCPA claim against the mortgage holder (the bank), and the bank moved for summary judgment on the TCPA claim. *Id.* at *8. The Court granted the bank's motion finding that the TCPA did not apply to the bank's foreclosure. *Id.* The reasoning of ***Schmidt*** applies in the present case. As the Court recognized in ***Schmidt***, when a debtor defaults on a mortgage payment, and the mortgage holder forecloses on the collateral that secured the loan (in this case, the Property), the TCPA does not apply. *Id.* A foreclosure does not fall within the TCPA's definition of "trade," "commerce," or "consumer transaction." *See* Tenn. Code Ann. § 47-18-103(19) (2013); *see also* ***Pursell v. First Am. Nat. Bank***, 937 S.W.2d 838, 842 (Tenn. 1996) (holding that the TCPA's definition of "trade or commerce" does not extend to dispute arising over repossession of the collateral securing a loan.). Accordingly, we conclude that the trial court did not err in granting Appellees' motion for summary judgment on Mr. Ross's TCPA claim.

## I. Violation of the Federal Fair Debt Collection Practices Act ("FDCPA")

In the second amended complaint, Mr. Ross alleges that Appellees violated the FDCPA because "none of the [Appellees] appear to be the lawful holder of the mortgage upon which they seek to collect and none of the [Appellees] are the real party in interest with standing to foreclose or collect on the CMI Note." Mr. Ross further avers that Appellees "are engaged in debt collection, the alleged collection of money from [the Rosses], by and through their agents who represent themselves as debt collectors, governed under the FDCPA."

As correctly noted by the trial court, the FDCPA distinguishes between "creditors," who are not subject to the FDCPA, and "debt collectors," who are subject to

the FDCPA.  The Sixth Circuit has noted that "the legislative history of § 1692(a)(6) indicates conclusively that a debt collector does not include the consumer's creditors . . . ." *Lufkin v. Capital One Bank (USA), N.A.*, No. 3:10-CV-18, 2010 WL 2813437, at \*5 (E.D. Tenn. July 16, 2010) (quoting *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003).  An entity qualifies as a "debt collector" under the FDCPA only if it satisfies one of two requirements—either it: (1) "[U]ses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts;" or (2) "[R]egularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6).  If a plaintiff establishes one of the foregoing prongs, a defendant is considered a "debt collector" unless it falls into one of several exceptions, such as where the debt at issue "was not in default at the time it was obtained by [the defendant]." *See* 15 U.S.C. § 1692a(6)(F)(iii).  As noted by the Sixth Circuit, "[t]he term 'debt collector' has a particular meaning, however: it refers only to persons attempting to collect debts due 'another.'" *MacDermid v. Discover Financial Services*, 488 F.3d 721, 734 (6th Cir. 2007).  Stated another way, "a creditor is not a debt collector for purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Stafford v. Cross Country Bank*, 262 F. Supp.2d 776, 794 (W.D. KY 2003).  In the instant case, CMI is not a "debt collector" due to the fact that it held the CMI Note at the time of the foreclosure.  Rather, it is a "creditor;" as such, the trial court correctly held that the FDCPA is not applicable to this case and properly dismissed Mr. Ross's FDCPA claim.It does not matter that CMI assigned its interest in the CMI Note after originating the loan because it reacquired the CMI Note later. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017).

## J. Violation of the Real Estate Settlement Procedures Act ("RESPA")

Mr. Ross asserts a private right of action under RESPA, 12 U.S.C. § 2601, *et seq.*.  Specifically, he argues that Appellees violated RESPA sections 2605 and 2607, concerning disclosures and notices relating to the assignment, sale, or transfer of mortgage servicing, and section 2608, prohibiting kickbacks and unearned fees.

The trial court dismissed Mr. Ross's RESPA claims on the ground that same are barred by the applicable three-year statute of limitations.  We agree with the trial court.

12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the

occurrence of the violation, except that actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2614; *see also* **Wilfong v. CRK Real Estate, LLC**, M2013-00188-COA-R3-CV, 2014 WL 2768631, at *7 (Tenn. Ct. App. June 17, 2014) (affirming dismissal of RESPA claim due to the running of the three year statute of limitations). Concerning what constitutes the "date of the occurrence of the violation," as used in section 2614, courts have interpreted this language to mean the date of the closing of the real estate transaction. *See* **Snow v. First American Title Insurance Co.**, 332 F.3d 356 (5th Cir. 2003); **Wilfong**, 2014 WL 2768631, at *6; **Mhoone v. U.S. Bank Home Mortgage**, No. 12-cv-03053-JPM-TMP, 2013 WL 6858680, at *6 (W.D. Tenn. Dec. 30, 2013).

It is undisputed that the CMI Note and CMI Deed were signed by the Rosses on October 25, 2006. The CMI Deed was recorded on November 2, 2006. Accordingly, the statute of limitations for any potential claims under sections 2607 or 2608 of RESPA would have expired after November 2, 2007; the Rosses claims under section 2605 would have expired after November 2, 2009. The Original Complaint was filed on November 8, 2010; however, the Rosses did not include a RESPA cause of action until they filed the second amended complaint on May 1, 2015. As such, we conclude that the trial court correctly dismissed the RESPA claims as time-barred.

### K. Unjust Enrichment

In the second amended complaint, Mr. Ross asserts that Appellees "Lazarus and Heichelbech purchased [the Property] out of wrongful foreclosure and knew or should have known of defects in [the] chain of title and other document irregularities." He further claims that Messrs. Lazarus and Heichelbech "actively participated in conversion and mortgage fraud" and "paid about one third of the fair market value of the . . . Property." As such, Mr. Ross argues that Messrs. Lazarus and Heichelbech were unjustly enriched. The trial court dismissed this claim on grant of summary judgment. As discussed in detail above, MERS involvement in the foreclosure did not negate the validity of the sale. Furthermore, there is no dispute that the Rosses were in default on their mortgage, and they failed to cure the default before the foreclosure. Messrs. Lazarus and Heichelbech were simply the purchasers for value; they were not unjustly enriched. Accordingly, we conclude that the trial court did not err in dismissing the unjust enrichment claim.

### L. Breach of Fiduciary Duties (as to all Trustees and Title Companies)

In the second amended complaint, Mr. Ross alleges that the original trustee under the CMI Deed, the substitute trustee, and various mortgage servicing entities breached

certain fiduciary duties owed to CMI and Appellants. Specifically, the complaint avers that these Appellees

> failed to exercise due diligence to determine ownership interests and condition of [Appellants'] title to their Property prior to foreclosing on it, [and] also failed to properly record the necessary documents until after the Property had been sold, thereby negligently and unlawfully converting [Appellants'] Property to Defendants Lazarus and Heichelbech . . . .

The trial court dismissed the claims for breach of fiduciary duties stating, in relevant part, that:

> The Court has determined above that CMI and the other Defendants are not liable for any alleged fraudulent conveyance or false documentation, and these Defendants have merely followed the terms of the CMI Deed of Trust and CMI Note.

We agree with the trial court. There is no evidence that Appellees failed to follow proper procedure in foreclosing on the Property. The Rosses defaulted on the mortgage and CMI foreclosed pursuant to the authority granted in the mortgage documents. Such action cannot form the basis for an unlawful conversion or a breach of fiduciary duty. As such, we affirm the trial court's dismissal of the breach of fiduciary duty claims.

### M. Conversion

Mr. Ross asserts that the Property "was unlawfully converted to third parties through wrongful foreclosure and the . . . alleged acts and omissions of the [Appellees]." We have previously determined that the undisputed facts show that CMI's foreclosure of the Property was lawful and in compliance with the CMI Deed. In the absence of a wrongful foreclosure, there is no conversion. Accordingly, the trial court properly dismissed this cause of action on grant of Appellees' motion for summary judgment.

### N. Promissory Estoppel

Promissory estoppel is explained as:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991) (quoting

Restatement (Second) of Contracts § 90); *see also **Alden v. Presley***, 637 S.W.2d 862, 864 (Tenn. 1982). There are, however, limits to the application of promissory estoppel:

> Detrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promisee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.

*Alden*, 637 S.W.2d at 864 (citing L. Simpson, Law of Contracts § 61 (2d ed.1965)).

The doctrine of promissory estoppel is also referred to as "detrimental reliance" because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his or her detriment. ***Engenius Entertainment, Inc. v. Herenton***, 971 S.W.2d 12, 19-20 (Tenn. Ct. App. 1997) (citing ***Foster & Creighton Co. v. Wilson Contracting Co.***, 579 S.W.2d 422, 427 (Tenn. Ct. App. 1978)). Furthermore, the promise on which the promisee relied must be unambiguous and not unenforceably vague. ***Amacher***, 826 S.W.2d at 482. However, a "claim of promissory estoppel is not dependent upon the existence of an expressed contract between the parties." ***Engenius Entertainment***, 971 S.W.2d at 19 (citing ***Arcadian Phosphates, Inc. v. Arcadian Corp***., 884 F.2d 69, 73-74 (2d Cir. 1989)).

In the second amended complaint, Mr. Ross asserts that Appellees made "promises, representations, and assurances," which the Rosses allegedly relied upon to their detriment. Concerning the specific "promises, representations, and assurances" made by Appellees, the complaint states only that "[t]he promises, representations, and assurances made as stated in County VIII for Breach of Contract were unambiguous and made with the intent to deceive [Appellants]." Count VIII, however, does not elaborate on the specific misrepresentations. In dismissing the promissory estoppel claim, the trial court noted that Mr. Ross has "not presented any evidence of any form of misrepresentation made by [Appellees]." We agree. From our review, Mr. Ross makes broad accusations of misrepresentations, promises, and assurances but fails to outline the

- 20 -

specific statements. As such, we conclude that the trial court properly dismissed the promissory estoppel claim on grant of summary judgment.

## O. Negligence

Mr. Ross further claims that Appellees owed a reasonable duty to exercise reasonable care in originating the mortgage, servicing the mortgage, following the law in assigning the mortgage, and other duties. Mr. Ross asserts that Appellees breached these duties regarding the CMI Deed or the CMI Note. In dismissing this claim, the trial court found that Mr. Ross

> failed to present any evidence as to how the [Appellees] were negligent in servicing the CMI Deed and the CMI Note. The Court finds this is simply a case where the Rosses borrowed money, obtained a benefit from the loan, and defaulted on said loan, and now are attempting to avoid the consequences of defaulting on the loan.

We agree with the trial court. Mr. Ross failed to present evidence to show that Appellees breached any duty in this case. Again, the Rosses defaulted on their mortgage, which event allowed CMI to proceed with foreclosure. As discussed in detail above, Mr. Ross has failed to show that Appellees deviated from any duty regarding the foreclosure proceedings. Accordingly, we conclude that the trial court correctly dismissed the negligence claim.

## VI. Withdrawal of Admissions

On January 11, 2017, the Rosses served several discovery requests on Appellees. CMI responded to the discovery requests on April 13, 2017, and the remaining Appellees responded on October 31, 2017. On November 10, 2017, Appellees filed several amended responses to the requests for admissions. On January 11, 2018, Appellees filed a joint motion, under Tennessee Rule of Civil Procedure 36.02, to withdraw their "conclusive admissions." Specifically, Appellees sought withdrawal of admissions under Tennessee Rule of Civil Procedure 36.01, which provides that a

> matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

In their motion, Appellees rely on Tennessee Rule of Civil Procedure 29, which states that unless the court orders otherwise, the parties may "modify the procedures provided in these rules for other methods of discovery" so long as the parties have

stipulated such in writing. Appellees asserted that, under Tennessee Rule of Civil Procedure 29, the parties agreed to extend the time for filing discovery responses. As such, Appellees maintained that any "conclusive admissions" under Tennessee Rule of Civil Procedure 36.01 should be set aside.

After hearing, the trial court granted Appellees' motion to withdraw admissions by order of February 6, 2018. The trial court specifically held that:

> IT IS HEREBY ORDERED THAT [Appellees'] Motion is granted. The Court finds that Tennessee Rule of Civil Procedure 37.02 applies to justify withdrawal of admissions to [Appellants'] Requests for Admissions served on January 10, 2017. The Court finds that presentation of the merits of the actions will be subserved by withdrawal of the admissions and that [Appellants] did not satisfy the Court that withdrawal would prejudice [Appellants] in maintaining the action on the merits.

On appeal, Mr. Ross asserts that the trial court's grant of Appellees' motion to withdraw admission constitutes reversible error.

Tennessee Rule of Civil Procedure 36.02 provides, in pertinent part:

> Any matter admitted under this rule is *conclusively established* unless the court on motion permits withdrawal or amendment of the admission.... [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. (emphasis added).

As discussed in ***Hutcheson v. Irving***, No. M2002-03064-COA-R3-CV, 2004 WL 419722, at *3-*4 (Tenn. Ct. App. March 8, 2004),

> to be entitled to withdraw or amend the admissions at issue Plaintiff must establish that the presentation of the merits of this action will be subserved by such withdrawal or amendment *and* that Defendant failed to prove that doing so will prejudice Defendant . . . . Our reading of Rule 36.02 leads us to conclude that both prongs must be established for Plaintiff to be entitled to relief under the rule. Proving one prong without the other is insufficient.

(Emphasis in original).

- 22 -

Concerning the scope of this Court's review of a trial court's decision regarding the withdrawal of admission, we have explained that:

> Trial courts are granted broad discretion over procedural matters. ***Douglas v. Estate of*** [***Robertson***] ***Robinson***, 876 S.W.2d 95, 97 (Tenn. 1994). Appellate courts review decisions regarding procedural matters using the deferential "abuse of discretion" standard of review. "An appellate court will not reverse a discretionary judgment of the trial court unless it affirmatively appears that such discretion has been explicitly abused to great injustice and injury of the party complaining." ***Id.*** (citing Tenn. R. App. P. 36(b); ***Bruce v. Bruce***, 801 S.W.2d 102, 107 (Tenn. Ct. App. 1990)). For issues of law, the standard of review is de novo, with no presumption of correctness. ***Lavin v. Jordon***, 16 S.W.3d 362, 364 (Tenn. 2000).

***Hutcheson***, 2004 WL 419722, at \*3; ***Meyer Laminates (SE), Inc. v. Primavera Distrib., Inc.***, 293 S.W.3d 162, 167 (Tenn. Ct. App. 2008) ("The discretion afforded the trial court by Rule 36.02 to permit withdrawal or amendment of matters deemed admitted provides a modicum of flexibility to avoid any potential injustice that might occur . . . ."); *see also* ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524-25 (Tenn. 2010) ("A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.").

As discussed above, Mr. Ross's theory of the case largely rests on his interpretation of the ***Ditto*** case and, specifically, whether MERS can transfer title to the Property. From our review, Appellees' withdrawn admissions had no bearing on Mr. Ross's ability to argue his position on MERS's role in the foreclosure. Furthermore, Mr. Ross has failed to demonstrate that he was prejudiced by the withdrawal of the admissions. Again, the withdrawal had no effect on Mr. Ross's ability to further his theory under ***Ditto***. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the withdrawal of Appellees' admissions under Tennessee Rule of Civil Procedure 36.02.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's order dismissing Appellants' complaint. The case is remanded for such further proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed to the Appellants, Mark Ross, the Estate of Deborah Ross, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE